1  James A. Anton (144999)
   Law Office of James A. Anton
2  7700 Irvine Center Drive, Suite 800
   Irvine, CA 92618
3  949-753-2818
   Email: *james@jamesantonlaw.com*
4
   Attorney for Defendants, Jeannette Manfre, Albert Manfre and
5  CMAM, Inc. dba Heritage Financial Services

6
                  UNITED STATES DISTRICT COURT
7
            CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION
8

9

10

11 KOLETTE A. PAGE AND CLETUS M. PAGE  )  Case No. 8:18-cv-01208 AG (KESx)
                                       )  (Assign: Hon. Judge Andrew J. Guilford)
12              PlaintiffS,             )
                                       )
13         v.                           )  **STATE AUTHORITIES IN SUPPORT
                                       )  OF MOTION FOR MORE DEFINITE
14 MINNESOTA LIFE INSURANCE            )  STATEMENT OR IN THE
   COMPANY, SHURWEST HOLDING           )  ALTERNATIVE MOTION TO
15 COMPANY, INC., SHURWEST, LLC;       )  DISMISS COMPLAINT AGAINST
   HAPPY STATE BANK & TRUST COMPANY    )  DEFENDANTS (Fed. R. Civ. P. 12(e)
16 DBA GOLDSTAR TRUST COMPANY;         )  and 12(b)(6)**
   FUTURE INCOME PAYMENTS, LLC;        )
17 CMAM, INC. DBA HERITAGE FINANCIAL   )  Hearing Date: December 17, 2018
   SERVICES; ALBERT ANDREW MANFRE;     )  Hearing Time: 10:00 am
18 JEANNETTE MANFRE; MATTHEW LEE       )  Courtroom: 10D
   BIESER, AND DOES 1 – 10,            )
19                                      )
                Defendants.             )  **[REQUEST FOR JURY TRIAL]**
20 _____

21    Defendants, CMAM, Inc. dba Heritage Financial Services and Albert Manfre and Jeannette

22 Manfre (hereinafter collectively "Defendants") provide the attached state authorities in support of

23 their motion: (1) *Construction Protective Services, Inc. v. TIG Specialty Insurance (2002) 29 Cal. 4th*

24 *189*; (2) *Davies v. Sallie Mae, Inc. (2008) 168 Cal. App. 4th 1086*.

25                                                    LAW OFFICE OF JAMES A. ANTON

26 DATED: 9-24, 2018                                 _____
27                                                    James A. Anton, Attorney for Defendants, Jeannette Manfre,
                                                      Albert Manfre and CMAM Inc. dba Heritage Financial Services
28

---

Not a Legal Professional? Visit our consumer site

CASES & CODES    PRACTICE MANAGEMENT    JOBS & CAREERS    NEWSLETTERS    BLOGS    LAW TECHNOLOGY    Search FindLaw

Forms    Lawyer Marketing    Corporate Counsel    Law Students    JusticeMail    Reference



FindLaw  Caselaw  California  CA Supreme Ct.
CONSTRUCTION PROTECTIVE SERVICES INC v. TIG SPECIALTY INSURANCE COMPANY

# CONSTRUCTION PROTECTIVE SERVICES INC v. TIG SPECIALTY INSURANCE COMPANY

Print    Font size: A  A  Reset



Santa Ana Accident Lawyer
Traut Firm

Voted "Trial Lawyer Of The Year". No Upfront Cost or Consultation Fee. Call Now!

WEBSITE    DIRECTIONS

### Supreme Court of California

### CONSTRUCTION PROTECTIVE SERVICES, INC., Plaintiff and Appellant, v. TIG SPECIALTY INSURANCE COMPANY, Defendant and Respondent.

### No. S099647.

### Decided: November 14, 2002

Devirian & Shinmoto and Donald B. Devirian, Los Angeles, for Plaintiff and Appellant. Selman•Breitman, Alan B. Yuter and Rachel E. Hobbs, Los Angeles, for Defendant and Respondent. Wiley, Rein & Fielding;  Laura A. Foggan, John C. Yang, Alexander K. Sun;  Sinnot, Dito, Moura & Puebla, Randolph P. Sinnott, Los Angeles, Randy M. Marmor, Oakland,  for Insurance Environmental Litigation Association as Amicus Curiae on behalf of Defendant and Respondent. Horvitz & Levy, Mitchell C. Tilner, Encino, and Karen Bray for Fire Insurance Exchange, Farmers Insurance Exchange, Truck Insurance Exchange and Mid Century Insurance as Amici Curiae on behalf of Defendant and Respondent. Hancock Rothert & Bunshoft, W. Andrew Miller, William J. Baron and Kathryn C. Ashton, San Francisco, for London Market Insurers as Amicus Curiae on behalf of Defendant and Respondent.

FindLaw Career Center

Select a Job Title
Attorney
Corporate Counsel
Academic
Judicial Clerk
Summer Associate
Intern
Law Librarian

Search Jobs  Post a Job | Careers Home

View More

Code of Civil Procedure 1 section 431.70 provides in pertinent part:  "Where cross-demands for money have existed between persons at any point in time when neither demand was barred by the statute of limitations, and an action is thereafter commenced by one such person, the other person may assert in the answer the defense of payment in that the two demands are compensated so far as they equal each other, notwithstanding that an independent action asserting the person's claim would at the time of filing the answer be barred by the statute of limitations.   If the cross-demand would otherwise be barred by the statute of limitations, the relief accorded under this section shall not exceed the value of the relief granted to the other party."   In other words, section 431.70 permits a defendant in a civil action to assert a claim for relief in its answer and allege, in effect, that the defense claim constituted prior payment for the plaintiff's claim and therefore should be set off against any award in the plaintiff's favor.

In this case, the parties ask us to decide whether a comprehensive general liability insurance policy that obligates an insurer to defend and indemnify its insured against suits seeking damages thereby obligates the insurer to defend and indemnify the insured against a setoff claim asserted under section 431.70 in an answer.   Included within this issue is the question of what exactly a setoff claim is and whether a setoff claim can result in affirmative relief against the plaintiff (as can a cross-complaint) or is limited to reducing the plaintiff's recovery.   We conclude that a section 431.70 setoff claim cannot result in affirmative relief.   This conclusion is contrary to the conclusion of the Court of Appeal, and because the Court of Appeal relied on this point in finding a duty to defend and indemnify, we find it appropriate to permit the lower courts to reconsider the scope of the insurer's obligations based on a correct understanding of section 431.70.   As we shall explain, however, plaintiff has adequately stated a prima facie right to relief, and therefore the Court of Appeal was correct to reverse the trial court's order sustaining a demurrer.   Accordingly, we affirm the judgment of the Court of Appeal, without adopting that court's reasoning.



Drive Lyft. No Car Needed

Low-cost rental through our Express Drive program. Be your own boss.

I. Factual and Procedural Background

On review of an order sustaining a demurrer without leave to amend, we take as true the well-pleaded factual allegations of the complaint.   (Haggis v. City of Los Angeles (2000) 22 Cal.4th 490, 495, 93 Cal.Rptr.2d 327, 993 P.2d 983.)

Construction Protective Services, Inc. (CPS) provides security at construction sites, and TIG Specialty Insurance Company (TIG Insurance) was, at relevant times, its general liability insurer.   SHC/Mark Diversified (SHC) was the general contractor for construction at the Castlemont High School in Oakland, and it hired CPS to provide security at the construction site.   On or about October 19, 1996, during the course of construction, a fire broke out at the construction site, causing damage to SHC's work.   SHC refused to pay CPS, but the complaint does not make clear whether this refusal reflected dissatisfaction with CPS's services on account of the fire.   On or about May 20, 1998, CPS brought an action against SHC to recover payment for

services in the amount of $26,790. SHC asserted as an affirmative defense under section 431.70 that CPS was legally responsible for the damage arising out of the fire and therefore that SHC was entitled to set off fire damages against any amount it owed CPS for security services. The complaint does not explain why SHC asserted its claim by way of a section 431.70 setoff rather than a cross-complaint.

CPS tendered SHC's setoff claim to TIG Insurance, asking TIG Insurance to defend CPS against the claim. TIG Insurance refused the tender and stated that it would not provide CPS with a defense to the claim or indemnify CPS for any setoff that was ultimately awarded. CPS then employed its own counsel to oppose the setoff claim, and on or about April 29, 1999, it settled its dispute with SHC, receiving the sum of $20,000. The complaint does not relate how CPS and SHC arrived at the settlement amount, or what value these litigants gave to the setoff claim.

On February 10, 2000, CPS brought this action against TIG Insurance, alleging causes of action for breach of contract and breach of the covenant of good faith and fair dealing, and asserting that TIG Insurance should have defended CPS against SHC's setoff claim and indemnified CPS for the setoff amount. On May 22, 2000, the trial court sustained TIG Insurance's demurrer without leave to amend and dismissed the complaint. The trial court concluded that "under California law, an insurer does not have a duty to defend against affirmative defenses raised in response to an insured's complaint against another party." The Court of Appeal reversed, concluding that a liability insurer's duty to defend includes defense of setoff claims like the one at issue here. The court reasoned that the setoff claim constituted a suit under our definition of that term in Foster-Gardner, Inc. v. National Union Fire Ins. Co. (1998) 18 Cal.4th 857, 77 Cal.Rptr.2d 107, 959 P.2d 265 (Foster-Gardner) and that the claim could possibly result in an award of damages against CPS. We granted review.

II. Discussion

CPS argues that TIG Insurance should not be able to avoid its contractual obligation to defend and provide liability coverage by the fortuity that SHC asserted its claim against CPS as a setoff rather than as a cross-complaint or an independent suit. In other words, if payment for security services had not been at issue and SHC had simply filed an action against CPS for damages resulting from the fire, the insurance policy would unquestionably have obligated TIG Insurance to defend that action and indemnify CPS. But because CPS happened to have a claim against SHC for unpaid services, SHC was able to assert its fire damages claim by way of setoff rather than a separate complaint. CPS asserts that this procedural nuance should not affect TIG Insurance's obligation as a liability insurer.

TIG Insurance, on the other hand, relies on the plain language of the insurance policy. The policy is not appended to the complaint, but the complaint alleges, and TIG Insurance concedes, that it is a comprehensive general liability policy obligating TIG Insurance to defend suits seeking damages. TIG Insurance argues that a setoff claim asserted in an answer is not a suit seeking damages, and it relies on our literal interpretation of the word "suit" in Foster-Gardner, supra, 18 Cal.4th at page 887, 77 Cal.Rptr.2d 107, 959 P.2d 265, where we stated that a "suit" is a "court proceeding initiated by the filing of a complaint." (Italics added.) TIG Insurance also points out that the insurance policy at issue here requires it to defend CPS in a "suit seeking . damages." (Italics added.) TIG Insurance argues that SHC's setoff claim is not a "suit seeking . damages," because, contrary to the Court of Appeal's holding, it could not result in an award of affirmative relief against CPS. Rather, it could only reduce the amount of CPS's recovery. In this regard, TIG Insurance cites section 431.30, subdivision (c), which provides: "Affirmative relief may not be claimed in the answer."

Because the Court of Appeal relied on its conclusion that a setoff under section 431.70 can result in an award of affirmative relief against the plaintiff, we focus on this question. We agree with TIG Insurance that relief by way of a section 431.70 setoff is limited to defeating the plaintiff's claim.

One important function of the section 431.70 setoff procedure is to provide partial relief from the statute of limitations. When two parties have opposing claims against one another, whether or not the two claims are related, one party might allow the statute of limitations to run on its claim, reasoning that the two claims have canceled one another out. If the second party then pursues its claim in a court action, the first party should be permitted to assert its expired claim defensively, arguing in effect that its earlier decision not to pursue the claim constituted a form of payment or compensation to the second party. But because the statute of limitations otherwise bars the first party's claim, the use of that claim should be defensive only, and the first party's recovery should be limited to offsetting any amount the second party might obtain on its opposing claim. The legislative history of section 431.70 suggests the Legislature intended the section to codify this principle.

Prior to July 1, 1972, former section 440 provided: "When cross-demands have existed between persons under such circumstances that, if one had brought an action against the other, a counterclaim could have been set up, the two demands shall be deemed compensated, so far as they equal each other, and neither can be deprived of the benefit thereof by the assignment or death of the other." (Code Amends. 1873-1874, ch. 383, § 53, p. 300, italics added.) Notably, former section 440 said nothing about the statute of limitations, but a statute of limitations does not bar a defendant from alleging prior payment as a defense. Therefore, the statutory provision that "the two [cross-]demands shall be deemed compensated, so far as they equal each other" (ibid., italics added) suggested that the statute of limitations might not apply where a claim is asserted merely as a past payment rather than as a present cause of action. In Jones v. Mortimer (1946) 28 Cal.2d 627, 632-633, 170 P.2d 893 (Jones), we held just that.

Jones involved a setoff asserted by an insolvent building and loan association. (Jones, supra, 28 Cal.2d at p. 629, 170 P.2d 893.) Under applicable law, the association's shareholders were liable for the association's debts. (Id. at p. 630, 170 P.2d 893.) Therefore, the California Building and Loan Commissioner, who had

taken over the insolvent association, levied an assessment against the shareholders of $100 per share.   Jones owned four shares, so Jones's assessment was $400, but Jones never paid this assessment.   Meanwhile, Jones had sued the association to recover for services, and he eventually recovered a judgment of $1,536.10 against the association and the commissioner.   The commissioner had been paying the association's creditors at a rate of 50 cents on the dollar, so he determined to pay half the $1,536.10 judgment owed to Jones, or $768.05, but to deduct from this amount the $400 assessment levied against Jones, leaving a net of $368.05.   Jones refused to accept the $400 setoff and brought a proceeding to enforce his judgment.   (Id. at p. 629, 170 P.2d 893.)

We held that the $400 setoff was proper under section 440.   (Jones, supra, 28 Cal.2d at p. 634, 170 P.2d 893.)   In the course of our opinion, we rejected the argument that the $400 setoff claim was barred by the statute of limitations.   (Id. at pp. 632-633, 170 P.2d 893.)   We reasoned:  "Defendant could have set up the assessment as a counterclaim [to Jones's original claim] when the two coexisted and there was no question about the statute of limitations on either claim.   The next step [under section 440] is that the demands are compensated.   That can mean nothing more or less than that each of the claimants is paid to the extent that their claims are equal.   To the extent that they are paid, how can the statute of limitations run on either of them?"  (Jones, at p. 633, 170 P.2d 893.)

Sunrise Produce Co. v. Malovich (1950) 101 Cal.App.2d 520, 225 P.2d 973 (Sunrise Produce ) applied the holding of Jones to its own facts.   In Sunrise Produce, the plaintiff sued for $3,850 in payment for goods sold to the defendant.   The defendant admitted the allegations in the complaint but counterclaimed for $40,450 in unpaid trailer rentals (id. at p. 521, 225 P.2d 973), though the statute of limitations had run with respect to the trailer rental claim (id. at p. 522, 225 P.2d 973).   The trial court granted the plaintiff's motion to strike the counterclaim and then granted summary judgment for the plaintiff.   The Court of Appeal reversed, applying Jones.   The court misstated the facts of Jones (Sunrise Produce, at p. 522, 225 P.2d 973) but correctly understood our holding in that case (id. at p. 523, 225 P.2d 973) and concluded, as we did in Jones, that the statute of limitations did not prevent the defendant from asserting payment as a defense.   (Sunrise Produce, at pp. 523-524, 225 P.2d 973.)   The court stated:  "This is a fair rule as it provides in effect that plaintiff's and defendant's claims, having coexisted in point of time, are deemed compensated to the extent that they equal each other, and the statutes of limitation should not bar the defendant's right to show that compensation."  (Id. at p. 523, 225 P.2d 973.)   The court further held that a claim need not be liquidated (that is, one having a fixed monetary value) in order for a defendant to allege the claim as a setoff.   (Id. at pp. 524-525, 225 P.2d 973.)

The decision in Sunrise Produce might be read as permitting the defendant to collect the full $40,450 on its counterclaim, though that result would be  inconsistent with the logic of Jones, which permitted the setoff defense but said nothing about allowing a defendant to obtain affirmative relief on a time-barred claim.   Perhaps in part to clarify this question, the Legislature repealed former section 440 in 1971 (Stats.1971, ch. 244, § 43, p. 389) and enacted in its place section 431.70, codifying the rule of Jones and Sunrise Produce but adding the following sentence:  "If the cross-demand would otherwise be barred by the statute of limitations, the relief accorded under this section shall not exceed the value of the relief granted to the other party."  (§ 431.70, added by Stats.1971, ch. 244, § 29, p. 386.)   Section 431.70 has, in relevant part, remained unchanged since its enactment in 1971.

A legislative committee comment relating to the enactment of section 431.70 (reprinted at 14A West's Ann.Code Civ. Proc. (1973 ed.) foll. § 431.70, p. 413) cites Jones and Sunrise Produce and confirms that "Section 431.70 continues the substantive effect of former Code of Civil Procedure Section 440."  Significantly, nothing in the legislative history of section 431.70 suggests the Legislature intended to permit defendants to obtain affirmative relief (that is, relief beyond defeating the plaintiff's claims) without filing a cross-complaint.   Confusion, however, arises because of the following provision:  "If the cross-demand would otherwise be barred by the statute of limitations, the relief accorded under this section shall not exceed the value of the relief granted to the other party."  (§ 431.70.)  This sentence suggests by negative implication that, if the cross-demand is not barred by the statute of limitations, a setoff claim can result in an affirmative award in the defendant's favor.

CPS, of course, adopts this reasoning in support of its position that the setoff claim at issue here constitutes a suit seeking damages, thereby triggering TIG Insurance's duty to defend, and the Court of Appeal in this case agreed with this argument.   But this interpretation is in direct conflict with section 431.30, subdivision (c), which, as noted, states that "[a]ffirmative relief may not be claimed in [an] answer."  Because of the tension between these two provisions, a leading commentary on California procedure recommends that, where the cross-demand is not barred by the statute of limitations, a defendant should assert its claim by way of cross-complaint rather than relying solely on a setoff.   (3 Cal. Forms of Pleading and Practice Ann. (2001) § 26.114[5], p. 26-104.)

We think the best reading of section 431.70 is that a setoff claim may only be used defensively, being in nature a defensive pleading asserting that the claim constituted prior payment for the amount sought in the plaintiff's complaint.   Indeed, section 431.70 expressly refers to the setoff claim as "the defense of payment," and partial payment of Jones's judgment was the logic of our holding in Jones.   (Jones, supra, 28 Cal.2d at p. 633, 170 P.2d 893.)   One who has paid a liability in full or in part can allege that payment as a defense to a cause of action, but in that case the defendant merely hopes to defeat the plaintiff's complaint.   If, in addition, the defendant seeks affirmative relief in its favor (such as the recovery of damages), it must file a cross-complaint, because section 431.30, subdivision (c), bars it from claiming affirmative relief by way of the answer.   (See Estate of Bell (1914) 168 Cal. 253, 258, 141 P. 1179.)   Furthermore, to the extent a defendant seeks affirmative relief, the applicable statute of limitations applies to the defendant's claim, just as it would if the defendant were asserting its claim in an independent action.   Therefore, when the Legislature limited the

relief available under section 431.70, but only where "the cross-demand would otherwise be barred by the statute of limitations," it was not eliminating the requirement of filing a cross-complaint to obtain affirmative relief; rather, it was merely confirming the possibility of full relief where the statute of limitations imposes no bar.

We hold that a defendant may not obtain an award of affirmative relief against a plaintiff by way of section 431.70; rather, the defendant may only assert the setoff defensively to defeat the plaintiff's claim in whole or in part.   This interpretation of the Code of Civil Procedure does not, however, resolve the question whether a setoff claim constitutes a suit seeking damages for purposes of a comprehensive general liability insurance policy.   Though a defendant may not obtain affirmative relief by way of a setoff claim, the defendant does reduce the claim to a monetary value by successfully asserting it as payment for the liability the plaintiff is alleging in its complaint.   And this point brings us back to the heart of CPS's argument.   If not for the debt SHC owed to CPS, SHC's fire damages claim against CPS, if asserted in a court of law, would unquestionably have been a suit for damages.   But because of its debt to CPS, SHC could allege the claim as a setoff rather than by way of complaint.   For accounting purposes, however, the effect was no less a monetary recovery than would be a damages award.   In these circumstances, CPS argues we should treat the setoff claim as a suit for damages.

  We decline to decide this question in a case like this one where the precise terms of the insurance policy are not before us.   Nevertheless, we affirm the judgment of the Court of Appeal.   CPS's complaint adequately stated a prima facie right to relief, and therefore the Court of Appeal was correct to reverse the trial court's order sustaining the demurrer.   In an action based on a  written contract, a plaintiff may plead the legal effect of the contract rather than its precise language.  (See generally 4 Witkin, Cal. Procedure (4th ed.   1997) Pleading, §§  388, 389, 479, 480, 481, pp. 486-487, 572-574.)   CPS has chosen to proceed in this manner, and though the complaint could have been clearer, it satisfactorily alleged (1) that the insurance policy obligated TIG Insurance to defend and indemnify CPS against suits seeking damages, and (2) that under the terms of the policy, SHC's setoff claim fell within the scope of that contractual obligation.   Whether CPS can prove these allegations (that is, whether its interpretation of the applicable contractual language is correct in light of what we have said here) remains to be seen, but the allegations are sufficient to establish a prima facie right to relief.
  TIG Insurance may move for judgment on the pleadings or summary judgment, raising the same arguments it raised in its demurrer, and in support of its motion it may provide the court with a copy of the insurance policy in question.

III.   Conclusion

The judgment of the Court of Appeal is affirmed.

FOOTNOTES

FN1.   All further statutory references are to the Code of Civil Procedure unless otherwise indicated.. FN1.   All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

BROWN, J.

WE CONCUR: GEORGE, C.J. KENNARD, BAXTER, WERDEGAR, CHIN, and MORENO, JJ.

| | |
|---|---|
| RESEARCH THE LAW | Cases & Codes / Opinion Summaries / Sample Business Contracts / Research An Attorney or Law Firm |
| MANAGE YOUR PRACTICE | Law Technology / Law Practice Management / Law Firm Marketing Services / Corporate Counsel Center |
| MANAGE YOUR CAREER | Legal Career Job Search / Online CLE / Law Student Resources |
| NEWS AND COMMENTARY | Law Commentary / Featured Documents / Newsletters / Blogs / RSS Feeds |
| GET LEGAL FORMS | Legal Forms for Your Practice |
| ABOUT US | Company History / Media Relations / Contact Us / Privacy / Advertising / Jobs |
| FIND US ON |  |

Copyright © 2018, Thomson Reuters. All rights reserved.

9/24/2018 Davies v. Sallie Mae, Inc., 168 Cal. App. 4th 1086 - Cal: Court of Appeal, 1st Appellate Dist., 4th Div. 2008 - Google Scholar

Case 8:18-cv-01208-AG-KES Document 179-2 Filed 09/24/18 Page 6 of 13 Page ID #:331

168 Cal.App.4th 1086 (2008)

# STEPHEN T. DAVIES, Plaintiff and Appellant,
v.
## SALLIE MAE, INC., et al., Defendants and Respondents.

No. A119944.

**Court of Appeals of California, First District, Division Four.**

October 31, 2008.

1088 *1088 Stephen T. Davies, in pro. per., for Plaintiff and Appellant.

Law Offices of Miriam Hiser and Miriam Hiser for Defendant and Respondent Sallie Mae, Inc.

Murphy Austin Adams Schoenfeld, J. Scott Alexander and John E. Fisher for Defendant and Respondent EdFund.

# OPINION

RUVOLO, P. J.

Stephen T. Davies (Davies) appeals from the trial court's grant of demurrers to his second amended complaint (SAC) without leave to amend. Finding the trial court committed no error in determining Davies's SAC failed to state a cause of action against his student loan note holders, we affirm.

# I. FACTUAL AND PROCEDURAL BACKGROUND

Davies obtained Federal Stafford student loans from respondents Sallie Mae, Inc. (Sallie Mae), and EdFund to fund his education between 1993 and 1997. In connection with his student loans, Davies signed a promissory note. Davies does not dispute his underlying obligation to pay his student loans. In 1998, Davies graduated from law school and his repayment obligations began. From 1998 through 2005, respondents granted his economic hardship deferment requests.

1089 *1089 In connection with his deferment requests, between 1998 or 1999, and 2000, respondents requested, and Davies provided, verification of his income and economic hardship status. Pursuant to this request, Davies's then employer, attorney Steven A. Schectman (Schectman), drafted letters substantiating Davies's minimum income and employment status.[1]

In October 2005, respondents placed Davies's student loans in default and commenced collection activities. Davies filed his original complaint, drafted on a Judicial Council form, filed June 22, 2006, alleging that as a result of his employer's letters, a contract was formed between Schectman and respondents to which Davies was a third party beneficiary. He requested contract reformation, declaratory relief affirming the alleged contract to which Davies was a third party beneficiary, and other equitable relief. On January 11, 2007, the trial court sustained respondent EdFund's demurrer for failure to state a cause of action with leave to amend.

9/24/2018 Davies v. Sallie Mae, Inc., 168 Cal.App.4th 1086 - Cal: Court of Appeal, 4st Appellate Dist., 4th Div. 2008 - Google Scholar

Case 8:18-cv-01208-AG-KES Document 79-2 Filed 09/24/18 Page 7 of 13 Page ID #:332

Davies filed his first amended complaint (FAC) on February 22, 2007. In the FAC he again alleged a third party beneficiary breach of contract, declaratory relief, and equitable relief. After a hearing on April 27, 2007, the trial court sustained respondents' demurrers to the FAC with leave to amend, again for failure to state a cause of action.

Davies filed his SAC on May 17, 2007. On August 2, 2007, the trial court issued its ruling sustaining respondents' demurrers without leave to amend as to all causes of action contained in the SAC based on Code of Civil Procedure section 430.10, subdivisions (e) and (f). A judgment of dismissal was entered on September 5, 2007, the notice of entry of judgment was filed on September 10, 2007, and Davies filed this timely appeal.

## 1090 *1090 II. DISCUSSION

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. We give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] Further, we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law. [Citations.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.]" (_City of Dinuba v. County of Tulare_ (2007) 41 Cal.4th 859, 865 [62 Cal.Rptr.3d 614, 161 P.3d 1168].) "When reviewing a judgment dismissing a complaint after a successful demurrer, we assume the complaint's properly pleaded or implied factual allegations are true . . . ." (_Campbell v. Regents of University of California_ (2005) 35 Cal.4th 311, 320 [25 Cal.Rptr.3d 320, 106 P.3d 976].)

"In the construction of a pleading, for the purpose of determining its effect, its allegations must be liberally construed, with a view to substantial justice between the parties." (Code Civ. Proc., § 452.) "Reversible error is committed if the facts alleged show entitlement to relief under _any_ possible legal theory. [Citation.]" (_Duggal v. G.E. Capital Communications Services, Inc._ (2000) 81 Cal.App.4th 81, 86 [96 Cal.Rptr.2d 383], italics added.)

"[W]hen [a demurrer] is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse. [Citation.]" (_City of Dinuba v. County of Tulare, supra,_ 41 Cal.4th at p. 865.) "The _plaintiff has the burden_ of proving that an amendment would cure the defect. [Citation.]" (_Campbell v. Regents of University of California, supra,_ 35 Cal.4th at p. 320, italics added.) In reviewing the granting of a demurrer, we review the trial court's result for error, and not its legal reasoning. (_Mendoza v. Town of Ross_ (2005) 128 Cal.App.4th 625, 631 [27 Cal.Rptr.3d 452].)

The first cause of action alleged in Davies's SAC is breach of contract. He identifies two contracts, and two breaches: (1) respondents breached a contract with Davies's former employer Schectman, to which contract Davies was a third party beneficiary; and (2) respondents breached the terms of the promissory note governing his student loans. The second cause of action is for a judicial declaration stating Davies is the intended beneficiary to an alleged contract between Schectman and respondents and a judicial declaration interpreting certain language in the promissory note. The third cause of action is for equitable

1091 relief, alleging that his obligation to pay interest on his *1091 loans accumulated through June 2001 is excusable under legal theories of changed circumstances, impossibility, extrinsic fraud, equitable estoppel and latches.

9/24/2018 Davies v. Sallie Mae, Inc., 168 Cal.App.4th 1086 - Cal: Court of Appeal, 4th Appellate Dist., 3rd Div. 2008 - Google Scholar

Case 8:18-cv-01208-AG-KES   Document 79-2   Filed 09/24/18   Page 8 of 13   Page ID #:333

(1) "Where a written contract is pleaded by attachment to and incorporation in a complaint, and where the complaint fails to allege that the terms of the contract have any special meaning, a court will construe the language of the contract on its face to determine whether, as a matter of law, the contract is reasonably subject to a construction sufficient to sustain a cause of action for breach." (*Hillsman v. Sutter Community Hospitals* (1984) 153 Cal.App.3d 743, 749-750 [200 Cal.Rptr. 605], fn. omitted.) Moreover, "[t]he rule on demurrer is simply a variation on the well-recognized theme that `It is . . . solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence.' [Citations.]" (*Id.* at p. 750, fn. 4.)

In his opening brief on appeal, Davies concedes that the letters written by Schectman to Davies's student loan providers did not create a contract "and, that is no longer an issue in the action." However, in his reply brief, Davies addresses the time bar issue surrounding his third party beneficiary cause of action, and half-heartedly addresses the elements of a contract. Regardless, as the trial judge made clear in the hearing on respondent EdFund's first demurrer, "[t]here's nothing on the face of [the letter], though, that gives rise to any sort of promise." We agree. None of the letters written by Schectman is a contract. They do not fit within the definition of a contract: "an agreement to do or not to do a certain thing." (Civ. Code, § 1549.) Furthermore, there is no consideration provided for any alleged "promises" by either party to the alleged contract. Schectman promises to do nothing—this is plain. Schectman drafted the letters merely to substantiate Davies's repeated economic hardship deferment requests. Because the letters fail to meet the definition of a contract, the trial court did not err in sustaining the demurrers to Davies's allegation of breach of contract under a third party beneficiary theory. Therefore, we affirm the trial court's sustaining the demurrers based on Code of Civil Procedure section 430.10, subdivisions (e) and (f).

Davies's argument for breach of the promissory note contract stems from the language of the default and acceleration clause in that document. "Acceleration and Default [¶] At the option of the holder, the entire unpaid balance shall become immediately due and payable upon the occurrence of any one of the following events: . . . (iv) I default on the loan(s). [¶] The following events shall constitute a default on a loan: (i) I fail to pay the entire unpaid balance after the holder has exercised its option under the preceding paragraph; or (ii) I fail to make installment payments when due, or fail to comply with other terms of the loan(s), and the guarantor reasonably concludes I no *1092 longer intend to honor my repayment obligation, provided my failure has persisted for at least 180 days for payments due monthly or 240 days for payments due less frequently than monthly. If I default, the guarantor may purchase my loan, and capitalize all then-outstanding interest into a new principal balance, and collection fees will become immediately due and payable. . . ." Under "Governing Law and Notices," the note indicates that it is to be "interpreted in accordance with the Higher Education Act of 1965, as amended (20 U.S.C. 1070 et seq.), other applicable federal statutes and regulations, and the guarantor's policies." The note also states that "[a]pplicable state law, except as preempted by federal law, may provide for certain borrower rights, remedies, and defenses in addition to those stated in this Note."

Davies's argument on appeal is that the demurrers were improperly sustained because he alleged sufficient facts, which we assume to be true, to show either that (1) respondents breached the terms of this promissory note vis-à-vis respondents' forbearance or deferment policy or (2) respondents did not reasonably conclude he "no longer intend[ed] to honor [his] repayment obligation[s]" under the terms of the note. Respondents contend that Davies's suit is a claim arising under the Higher Education Act of 1965 (HEA) (20 U.S.C. § 1070 et seq.) and that there is no private right of action under the HEA. Therefore, as a matter of law, Davies cannot state a claim.

*Parks School of Business, Inc. v. Symington* (9th Cir. 1995) 51 F.3d 1480, 1484-1485 (*Parks School*) involved a school terminated from the state's loan guarantee program. Parks is a private junior college, with a campus in Arizona. "U[nited] S[tudent] A[id] F[unds] [(USAF)] . . . [is] Arizona's designated guarantor of student loan programs. All of USAF's government funding comes from the federal government. [Fn. omitted.] USAF manages and operates a program for the guarantee of loans made by participating lenders on behalf of Arizona residents and others who are attending eligible institutions of higher learning in the State of Arizona. Parks contends that it was . . . an eligible institution by virtue of its ongoing participation agreement with the Secretary . . . of Education. [Citation.] [¶] . . . USAF terminated Parks' participation in the Arizona loan guarantee program." (*Id.* at p. 1483.) The district court granted defendant's demurrer, and the Ninth Circuit affirmed.

(2) To determine Parks School had no private right of action under the HEA, the court applied the "four-factor test enunciated by the Supreme Court in *Cort v. Ash* [(1975)] 422 U.S. 66 [95 S.Ct. 2080, 45 L.Ed.2d 26]." (*Parks School, supra,* 51 F.3d at p. 1484.) Those factors are whether (1) the plaintiff is one of the class for whose benefit the statute was enacted; (2) the legislative history indicates an intent to create or deny a private right of *1093 action; (3) "implying a right of action would be consistent with the purposes of the legislative scheme"; and (4) "the cause of action is one traditionally relegated to state law so that it would be inappropriate to infer a cause of action based solely on federal law. [Citation.]" (*Ibid.*)

The court in *Parks School* found the statute was enacted to benefit students. (*Parks School, supra,* 51 F.3d at p. 1484.) The court determined that Congress was silent as to a private right of action. However, the court determined that implying a private right of action would be inconsistent with the legislative scheme, since it would deter lenders from participating in the program. (*Id.* at p. 1485.) Additionally, the court noted that where a statute *already* has an enforcement mechanism, courts are wary of inferring a private right of action. (*Id.* at p. 1484.)

(3) The court went on to identify the HEA's enforcement mechanism as 20 United States Code section 1082. That section provides the Secretary of Education (Secretary) with "wide-ranging authority to enforce the provisions of the [HEA]." (*Parks School, supra,* 51 F.3d at p. 1485.) The court posits that "'[i]n light of the extensive enforcement authority given to the Secretary under this program, this court is convinced that *Congress intended this mechanism to be the exclusive means for ensuring a lender's compliance with the statutes and regulations.* The implication of a private cause of action would seriously undercut, rather than complement, the Secretary's enforcement powers. For example, there would be little chance of a lender later curing or correcting its violation or compromising with the Secretary, if the lender was already entangled in litigation on the same matter with an institution and particularly if any correction or compromise could possibly constitute an admission of fault in any other litigation.'" (*Ibid.*, italics added.)

(4) Since the Secretary has sole authority over enforcement of the statutes and regulations governing the HEA generally (20 U.S.C. § 1082; *Parks School, supra,* 51 F.3d at p. 1484), the question becomes whether Davies's suit seeks to enforce compliance with the HEA and its regulations. Standards for granting deferments and forbearances are described in 34 C.F.R. §§ 682.210 (2008), 682.211 (2008), and not in Davies's promissory note.[2] By alleging misconduct for refusing to grant Davies a continued deference or *1094 forbearance of loan repayment, Davies seeks to litigate the issue of whether he should have been granted a forbearance or deferment. This he cannot do, since the Code of Federal Regulations governs forbearances or deferments, and enforcement of the same is left to the Secretary. The Code of Federal Regulations mandates regulations to implement the HEA that in turn determine respondents' forbearance and deferment policies. (34 C.F.R. §§ 682.210 (2008), 682.211 (2008).) Therefore, suit concerning

application of that forbearance or deferment policy necessarily is "on the HEA." Enforcement of those regulations falls on the Secretary, and there is, therefore, no private right of action. (20 U.S.C. § 1082; _Parks School, supra,_ 51 F.3d at p. 1484.)

Similarly, the promissory note itself is to be interpreted in accordance with the HEA. The Code of Federal Regulations contains language, as respondent noted, that tracks the language of the promissory note. "Default. The failure of a borrower and endorser, if any, or joint borrowers on a PLUS or Consolidation loan, to make an installment payment when due, or to meet other terms of the promissory note, the Act, or regulations as applicable, if the Secretary or guaranty agency finds it reasonable to conclude that the borrower and endorser, if any, no longer intend to honor the obligation to repay, provided that this failure persists for— [¶] (1) 270 days for a loan repayable in monthly installments; or [¶] (2) 330 days for a loan repayable in less frequent installments." (34 C.F.R. § 682.200 (2008).)

Davies's suit alleging breach of the promissory note is focused on the definition of default in the note, particularly language concerning whether respondents reasonably concluded that he did not intend to pay his student loan. However, those terms in the promissory note "will be interpreted in accordance with the [HEA]" under the "Governing Law and Notices" provisions of the note. Suit on default terms of the promissory note therefore requires litigation on the HEA as to the meaning of the default terms in the note.

(5) Additionally, "default" defined by the Code of Federal Regulations refers to the "Secretary['s]" determination of whether the borrower reasonably intends "to honor the obligation to repay . . . ." (34 C.F.R. § 682.200 (2008).) Such reference to the Secretary serves as a reminder that "`Congress intended [the Secretary] to be the _exclusive_ means for ensuring a lender's compliance with the statutes and regulations.'" (_Parks School, supra,_ 51 F.3d at p. 1485, italics added.) After reviewing the language of the promissory note and the HEA, it is clear that Davies's suit on the note is actually a suit on the HEA. Since there is no private right of action under the HEA, the trial court properly granted respondents' demurrers.

1095 *1095 We note further that, although _Parks School_ involved a suit by an education institution over acts relating to regulations pertaining to the continuation of offers of student loans, and the instant matter revolves around conduct by the lending bodies to enforce the repayment of student loans already made, the _Parks School_ analysis is nonetheless on point. Particularly relevant is the court's statement that "`Congress intended this mechanism to be the _exclusive_ means for ensuring a lender's _compliance with the statutes and regulations._'" (_Parks School, supra,_ 51 F.3d at p. 1485, italics added.) Just as this statement applies to a private university's suit against its ex-student loan guarantor, it also applies to a student's complaint that his lender failed to administer deferments or forbearances in compliance with the applicable statutes and regulations.

In addition, in virtual unanimous fashion, when confronted with the issue other courts have determined there is no private right of action under the HEA. (See _Labickas v. Arkansas State University_ (8th Cir. 1996) 78 F.3d 333, 334 ["We conclude that no private right of action is implied under the HEA for student borrowers . . . . [T]he statute and legislative history do not otherwise suggest congressional intent to create a private remedy. [Citations.]"]; _Parks School, supra,_ 51 F.3d at p. 1485 ["`The implication of a private cause of action would seriously undercut, rather than complement, the Secretary's enforcement powers.'"]; _L'ggrke v. Benkula_ (10th Cir. 1992) 966 F.2d 1346, 1348, fn. 4 [finding no private cause of action and noting "A contrary result here has the potential to occasion a floodwater of federal actions by students perceiving themselves to be aggrieved . . . not to be risked absent some showing of supporting Congressional intent."]; see also _McCulloch v. PNC Bank Inc._ (11th Cir. 2002) 298 F.3d 1217, 1221 [collecting cases of the same result]; _Williams v. National School of Health Technology_ (E.D.Pa. 1993) 836 F.Supp. 273, 279 ["Congress

manifested its intention that the provisions [of the HEA] be enforced *administratively* by directing the Secretary to promulgate regulations to implement the amendments." (Italics added.)]; George W. v. U.S. Dept. of Educ. (E.D.Cal. 2000) 149 F.Supp.2d 1195, 1211 ["On balance, the foregoing factors disfavor a private right of action to enforce HEA regulations."]; but see Fischer v. UNIPAC Service Corp. (Iowa 1994) 519 N.W.2d 793, 796-799 [addressing the *merits* of student borrower's suit alleging denial of a deferment in violation of the HEA].)

Yet, Davies asserts that "[t]he within action clearly addresses claims and defenses to a private promissory note agreement between [a]ppellant and [r]espondents related to [r]espondents' forbearance policy." Davies avers that his suit is simply a breach of contract based on state law and not the HEA; this is incorrect. The text of the relevant areas of the promissory note, as reproduced above, provide no contractual rights to Davies regarding his *1096 continued deferment or forbearance requests. This language only describes the circumstances under which respondents may place him in default.

Davies also alludes to some sort of implied agreement where respondents obligated themselves to continue granting deferments or forbearances ad infinitum. "[Respondents] breached their obligations of good faith and fair dealing, and their obligations and responsibilities created by the deferments granted to [Davies], by refusing to grant [Davies's]" final deferment request before respondents placed his promissory note in default. Davies points to no authority supporting his legal position that one grant of forbearance or deferment locks the lender into making repeated grants until some undetermined time in the future.

Davies's reliance on United States v. Griffin (D.C.Cir. 1983) 228 U.S. App.D.C. 72 [707 F.2d 1477, 1482] (*Griffin*) is also misplaced. *Griffin* decided whether a student loan recipient, who defaulted on a loan made by the school he attended, retained defenses to that loan, enforceable against his school lender, after the government purchased the loan and attempted to collect. (*Id.* at pp. 1478-1479.) The court found the student's defenses enforceable against the original lender, were also enforceable against the government even after the student's default and the government's purchase of the loan. The court found this policy would not lead to government losses on the loans because "the government can turn around and recover from the lender default claims paid on obligations not in fact owed." (*Id.* at p. 1482.) Davies contends this case stands for the proposition that "a student loan borrower may bring actions against a lender based upon a lender's forebearance policy . . . ." To the contrary, as explained above, *Griffin* is simply about a student borrower's retention of defenses after the government's purchase of a defaulted loan.

The SAC also requests equitable relief. On appeal, however, Davies makes no argument for such relief or claim of error associated with the court's dismissal of that claim. Davies merely summarizes the allegations of his SAC. Accordingly, Davies's appeal concerning the demurrers as to his equity causes of action is waived. (See Reyes v. Kosha (1998) 65 Cal.App.4th 451, 466, fn. 6 [76 Cal.Rptr.2d 457] ["Although our review of a [demurrer] is de novo, it is limited to issues which have been adequately raised and supported in plaintiffs' brief. [Citations.] Issues not raised in an appellant's brief are deemed waived or abandoned. [Citation.]"].) Since we reject Davies's substantive claims on the merits, the dismissal relating to his request for declaratory relief is likewise affirmed.

Lastly, Davies contends, without describing why, the trial court abused its discretion in sustaining the demurrers to his SAC without offering him *1097 another chance to amend his pleading. It is of note that prior to sustaining the demurrer without leave to amend, the trial court offered Davies two previous opportunities to amend his pleading to state a cause of action. Since as a matter of law Davies cannot sustain a cause of action under the HEA, and Davies's briefs on appeal do not meet his burden on appeal

9/24/2018 Davies v. Sallie Mae, Inc., 168 Cal. App. 4th 1086 2 Cal: Court of Appeal, 1st Appellate Dist., 4th Div. 2008 - Google Scholar

Case 8:18-cv-01208-AG-KES   Document 79-2   Filed 09/24/18   Page 12 of 13   Page ID #:337

by indicating how his complaint could be amended to avoid bringing suit on the HEA, we determine the trial court did not abuse discretion in granting the demurrers to Davies's SAC without leave to amend.

## III. DISPOSITION

The orders sustaining respondents' demurrers to Davies SAC without leave to amend are affirmed. Each party to bear his or its own costs on appeal.

Sepulveda, J., and Rivera, J., concurred.

[1] Below is the text of one of the virtually identical letters drafted by Schectman.

"March 13, 2000 [¶] To Whom It May Concern:

"I am writing this letter at the request of Steven T. Davies, S.S.# . . ., to provide documentation of his income in connection with his Economic Hardship Deferment Request. [¶] Mr. Davies is an attorney at my law practice, Pacific Law, based in Eureka, California. Mr. Davies works exclusively, full-time, 40+ hours for Pacific Law working on several large and complex lawsuits on behalf of some 70 Plaintiffs in and around Eureka, California which my practice is exclusively focused on. Mr. Davies does not have outside employment and his responsibilities to Pacific Law require that Mr. Davies devote himself full-time to the litigation at Pacific Law. [¶] Mr. Davies has not received a salary since September, 1998 and will not receive economic compensation for his work until a settlement or court judgment on the cases he is working on, which I anticipate will not occur until August, 2000, approximately. I do, however, provide Mr. Davies with housing and cover his costs for food, some gas, and emergency items. These costs generally run under $200 per month or less. [¶] Since September 1999, I do not maintain employment records for Mr. Davies. We are in the process of formalizing a written employment agreement or formalized compensation agreement, but, at present, we have a non-written agreement that his compensation be fair. [¶] Please call me if you have any questions. [¶] Very Truly Yours, [¶] [/S/ Steven A. Schectman]"

[2] In his reply brief, Davies alleges that Code of Federal Regulations provisions are inapplicable because "The loan is a `Federal Stafford Loan', not a F[ederal] F[amily] E[ducation] L[oan] P[rogram] loan [*sic*]." The FFEL (Federal Family Education Loan) program is not a *type* of loan, but is instead a *program* offering various federal loans. The FFEL program implements a variety of federal loans: Federal Consolidation loans (20 U.S.C. § 1078-3), Federal PLUS loans (20 U.S.C. § 1078-2), and Davies's Federal Stafford loans. (See 20 U.S.C. ch. 28, subch. IV, pt. B, titled Federal Family Education Loan Program.) Davies's Federal Stafford loans are loans implemented under and derived from the FFEL *program,* therefore, those sections of the Code of Federal Regulations applicable to the FFEL program are applicable to Davies's Federal Stafford loans.

Save trees - read court opinions online on Google Scholar.

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF ORANGE, UNITED STATES OF AMERICA

    I am employed in the county of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 7700 Irvine Center Drive, Suite 800, Irvine, CA 92618.

On Sept. 24, 2018, I served the foregoing document described as **STATE AUTHORITIES IN SUPPORT OF MOTION FOR MORE DEFINITE STATEMENT OR IN THE ALTERNATIVE MOTION TO DISMISS COMPLAINT AGAINST DEFENDANTS (Fed. R. Civ. P. 12(e) and 12(b)(6)** on the interested parties in this action by placing a true copy thereof enclosed in sealed envelopes addressed as follows:

Brandon Reif, Reif Law Group, 10250 Constellation Blvd., Suite 100, Los Angeles, CA 90067 (310) 494-6500 (BReif@reiflawgroup.com) (*Plaintiff's*)

Kathy Huang, Alston & Bird, 333 South Hope Street, 16th Floor, Los Angeles, CA 90071 (213) 576-1000 (Kathy.huang@alston.com) (*Minnesota Life Ins. Co.*)

Joseph Aliberti, Law Office Joseph Aliberti, 4340 Von Karman Ave., Suite 110, Newport Beach, CA 92660 (949) 734-0550 (jma@alibertilaw.com) (*Mathew Beiser*)

Joe Akrotirianakis, King & Spalding, 633 West Fifth Street, Suite 1700, Los Angeles, CA 90071 (213) 443-4355 (JAkro@KSLAW.com) (Shurwest Holding Company, Inc. & Shurwest, LLC)

Faisal Zubairi, Dorsey & Shitnes, 600 Anton Blvd., Suite 2000, Costa Mesa, CA 92626-7655 (714-800-1461) (zubairi.faisal@dorsey.com) (Happy State Bank & Goldstar Trust Company)

    \_\_\_ **VIA MAIL:**   As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Orange County, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

    \_\_\_ **BY PERSONAL SERVICE:**   I delivered such envelope by hand to the office of the above addressee(s) during normal business hours.

    \_\_\_ **BY OVERNIGHT COURIER:** I caused the above-referenced document(s) to be delivered to an overnight courier service for delivery to the addressee(s) shown.

    [X] **VIA ELECTRONIC MAIL:** The document was served electronically to the respective e-mail address(es) of the party(ies) as stated above and/or on the mailing list.

    I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

    Executed Sept. 24, 2018, at Orange County, California.

_____
James A. Anton

STATE AUTHORITIES IN SUPPORT OF MOTION FOR DEFINATE STATEMENT OR TO DISMISS