Brandon S. Reif (SBN 214706)
Marc S. Ehrlich (SBN 198112)
Ohia A. Amadi (SBN 268876)
**REIF LAW GROUP, P.C.**
10250 Constellation Blvd., Suite 100
Los Angeles, CA 90067
Tel: 310.494.6500
Email: Docket@reiflawgroup.com; BReif@reiflawgroup.com;
         MEhrlich@reiflawgroup.com; OAmadi@reiflawgroup.com

Attorneys for Plaintiffs (Co-counsel information on next page)

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KOLETTE A. PAGE and CLETUS M. PAGE, individually and on behalf of their individual retirement accounts,<br><br>Plaintiffs,<br><br>v.<br><br>MINNESOTA LIFE INSURANCE COMPANY, a Minnesota corporation; SHURWEST HOLDING COMPANY, INC., an Arizona corporation; SHURWEST, LLC, an Arizona limited liability company; HAPPY STATE BANK & TRUST COMPANY dba GOLDSTAR TRUST COMPANY, a Texas business entity (corporate status unknown); FUTURE INCOME PAYMENTS, LLC, a Delaware limited liability company; CMAM, INC. dba HERITAGE FINANCIAL SERVICES, a California corporation; ALBERT ANDREW MANFRE, an individual; JEANETTE MANFRE, an individual; MATTHEW LEE BIESER, an individual; and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 8:18-cv-01208-AG-KES<br>[Hon. Andrew J. Guilford]<br><br>**DECLARATION OF KOLETTE A. PAGE IN SUPPORT OF PLAINTIFFS' OPPOSITION TO HAPPY STATE BANK DBA GOLDSTAR TRUST COMPANY'S MOTION TO DISMISS**<br><br>Action Filed:  July 9, 2018<br>Trial Date:     January 28, 2020 |

-1-

DECLARATION OF KOLETTE A. PAGE IN SUPPORT OF PLAINTIFFS' OPPOSITION
TO HAPPY STATE BANK DBA GOLDSTAR TRUST COMPANY'S MOTION TO DISMISS

1  Jon C. Furgison (SBN 205761)
2  **FURGISON LAW GROUP, P.C.**
   444 Longfellow Avenue
3  Hermosa Beach, CA 90254
   Tel: 310.356.6890
4  Email: jon@furgisonlawgroup.com
5
6  Attorneys for Plaintiffs
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

I, Kolette Page, declare:

1. I am over the age of 18 and a resident of the State of California. I am a plaintiff in this case along with my husband Cletus Page. I have personal knowledge of the facts set forth in this declaration and if called upon, I could and would give competent testimony at a hearing or trial regarding those facts.

2. I am 59 years old and I am partially retired. I permanently reside in Covina, California and have done so continuously since before the events alleged in my complaint.

3. In 2007, my husband Cletus Page and I had retained Security Financial Group to prepare a trust for us. On information and belief, Security Financial is a predecessor company to CMAM, Inc. dba Heritage Financial Services ("Heritage"). In or about September of 2016, I called Security Financial about making some revisions to our trust. However, Security Financial was apparently out-of-business so the number I called connected me to Heritage instead.

4. The receptionist from Heritage explained to me that Security Financial was now Heritage, but still had the capability to do the trust revisions for us. Heritage assigned Matthew Bieser to help us with the revisions. I had never met Matthew prior to his assignment as our financial advisor. He personally came to our home several times in order to get information for the trust revision.

5. Part of the information Matthew collected from me included the amount of money in my individual retirement account ("IRA"). At the time, Lincoln Financial Group ("Lincoln") managed my IRA. I had roughly $500,000 in my IRA invested exclusively in low risk Lincoln funds.

6. Once Matthew saw the value of my IRA, he soon began trying to convince me to invest in a program (the "Structured Settlement program") requiring me to liquidate the investments in my Lincoln IRA and transfer the entire amount of proceeds to an IRA custodian Matthew recommended—Defendant Goldstar Trust Company ("Goldstar"). GoldStar would then take custody of my IRA and

-1-

DECLARATION OF KOLETTE A. PAGE IN SUPPORT OF PLAINTIFFS' OPPOSITION TO HAPPY STATE BANK DBA GOLDSTAR TRUST COMPANY'S MOTION TO DISMISS

1  purchase securities in Future Income Payments, LLC ("FIP"). The proceeds from
2  FIP would be used to fund large permanent life insurance policies from Minnesota
3  Life Insurance Company. Matthew told Cletus and I that he was a licensed agent of
4  Minnesota Life Insurance Company ("MN Life").

5      7.    I was initially reluctant to buy into the Structured Settlement program
6  Matthew recommended. However, Matthew personally visited me and my husband
7  many times at our home before we agreed to invest in the Structured Settlement
8  program. He made me feel like I was his friend. Sometimes he would bring his
9  pregnant wife with him to my house. And, after she gave birth, he came with both
10 his wife and their newborn son Brandon. I even purchased Matthew a baby gift for
11 his son's birth.

12     8.    Matthew convinced me that investing in the Structured Settlement
13 program would earn me significantly more than my IRA was earning at the time.
14 He guaranteed me that it was a risk-free program and that I would earn at least 7%
15 annually on my investment in FIP—which was several percentage points higher
16 than my IRA was then earning.

17     9.    Matthew also explained to me that if I invested the proceeds from FIP
18 in permanent life insurance policies with MN Life, I would be able to afford a
19 policy with a death benefit of roughly $2 million. The policy would also increase in
20 value over time and eventually become another source of income.

21     10.    He told me and my husband that he had been introduced to the
22 Structured Settlement program by Defendants Shurwest, LLC and Shurwest
23 Holding Company, Inc. (together, "Shurwest"). He told me and my husband that his
24 contact at Shurwest was Melanie Schulze-Miller and that Shurwest recommended
25 the Structured Settlement program to him.

26     11.    Ms. Schulze-Miller and Shurwest were mostly in the back-office
27 operation but Matthew assured me and my husband that Shurwest vetted and
28

-2-
DECLARATION OF KOLETTE A. PAGE IN SUPPORT OF PLAINTIFFS' OPPOSITION
TO HAPPY STATE BANK DBA GOLDSTAR TRUST COMPANY'S MOTION TO DISMISS

endorsed the Structured Payment program and Shurwest's endorsement further guaranteed it as risk-free and safe program.

12. My husband and I did have a conference call once with Ms. Schulze-Miller and Matthew on the call. Matthew needed guidance on how to structure the transfer of money from our GoldStar IRA accounts to MN Life to cover our policy premiums. (See below.)

13. Matthew also informed me and my husband of another Shurwest employee who was assisting in the processing of my insurance policy application named Bridget Davis.

14. My husband and I depended on the money in my IRA to cover our immediate living expenses in retirement. Matthew assured me that FIP was a safe and conservative investment guaranteed to make at least 7% on my investment with complete return of my principal within five years. Matthew also promised me that between the life insurance and FIP investment, I would make thousands of dollars a month and benefit from the life insurance policy worth millions of dollars if either me or my husband died.

15. From September 2016 to about November 2016, Shurwest received and transmitted to MN Life medical records and test results from medical exams I had to undergo in order to qualify for a MN Life insurance policy.

16. I also submitted an extensive application to MN Life for the insurance policies. In the application, I disclosed details of our financial assets including our IRAs. I provided detail on the limited fixed income Cletus and I received also. There was a question in the application that asked how I would fund my policy premiums. Matthew—who was at my home with me while I completed the application—told me to indicate that I would fund the premium from my savings. This was correct, however my savings included over $500,000 dollars in my IRA.

17. As was his usual procedure, Matthew had brought the paperwork to my house. Matthew then sat by me and my husband while we completed the

1  paperwork. After Cletus and I completed the paperwork, Matthew took the
2  applications with him.

3      18.    On or about December 16, 2016, sometime after I learned that MN Life had approved me for the policy, Matthew brought paperwork to my home that was required to transfer my IRA to GoldStar and to purchase FIP securities. I had never received or reviewed any of the documents prior to Matthew bringing them to my home. Matthew brought multiple agreements, written in technical language. It amounted to a thick stack of papers. So there were many terms I either did not have time to review or understand. However, after 4 months of personal visits from Matthew, I trusted that he had my best interests at heart. Matthew simply opened the stack of papers to the places I needed to sign. So I just followed Matthew's instructions and signed where he indicated. He did not leave a copy for me to review before signing. And Cletus and I never received a copy of the fully signed paperwork until after the Structured Settlement program collapsed, so I did not have a chance to review the agreements after entering into them.

19.    Attached as Exhibit 1 hereto is a true and correct copy of the FIP Purchase Agreement ("FPA") that I signed. Matthew did not leave a copy of this with me or send me a copy once it was fully signed. I received a copy a year-and-a-half later, in or about April 2018, after FIP announced it was ceasing operations and would no longer make any payments to me or other investors. At that time, I went with my husband Cletus to meet Mr. Manfre ("Al") in person at Heritage's office. Al provided me with a copy of the FPA along with my account documents.

20.    Matthew also brought GoldStar forms for me to fill out in order to transfer my Lincoln IRA to GoldStar. I had never previously heard of GoldStar and did not freely choose GoldStar as my IRA custodian. Matthew told me that all the FIP investors used GoldStar so I did not have a choice.

21.    Prior to FIP ceasing operations, neither Matthew nor anyone from Shurwest, Heritage, or GoldStar ever told me that FIP was under investigation by

numerous state and federal regulators for issuing predatory loans to retirees, veterans and other pensioners or how much risk I was taking by investing my entire IRA in the Structured Settlement program.

22. In or about January 2017, the time came for me to fund my initial partial premium for the MN Life insurance policy. The combined payments for my policy and Cletus's policy exceeded our combined annual income. In order to fund the policy premiums, GoldStar sold some of my FIP securities and distributed money from my IRA to my bank which I then transferred to MN Life. I ended up being taxed on the distribution. Neither Matthew or anyone else from GoldStar, Heritage or Shurwest ever told me that the distribution from GoldStar to fund the insurance policies would be a taxable event.

23. In fact, I had to take a loan on the MN Life policy to help pay for the additional taxes from the distribution that came due and I paid in April 2017.

24. Matthew depended on Ms. Shulze-Miller and Shurwest to determine how exactly I was to get money from my GoldStar IRA to MN Life. So on or about January 17, 2017, while Matthew was at my house, Matthew called Ms. Schulze-Miller so Cletus and I could have a conference call. Matthew put Ms. Schulze-Miller on speaker and I listened as she explained that she would arrange for a transfer from my GoldStar IRA to my bank in California and then I would need to wire the money to MN Life. This is in fact what I did.

25. Defendants Structured Settlement program began unraveling in or about February 2018. It appeared to me that I was not receiving the amount of distributions that I was supposed to from FIP.

26. My husband and I called Matthew to talk about the shortfall and for Matthew to find out what was holding up my payments. After two months of increasingly panicked calls from Cletus and I, my husband and I finally received a joint payment in April 2018 for $22,000 after tax. However, shortly after that I

received a letter from FIP stating that it was ceasing operations due to regulatory actions against it and from GoldStar failing to "keep partner" with FIP.

27.   Since that time, I have gotten confirmation both from conversations with Matthew and with Al and from documents produced so far in this case, that Shurwest was the hub connecting GoldStar, Heritage, FIP and Minnesota Life in the Structured Settlement program.

28.   Ms. Schulze-Miller regularly communicated by phone and/or email with FIP and GoldStar directly. She provided the opportunity to sell FIP interests to Matthew and Heritage. She also provided logistical and other advice to facilitate the program. And Shurwest was the intermediary between Heritage and MN Life. While Cletus and I primarily interacted with Matthew and Heritage and received documents from them, they submitted the documents we gave back to them to Shurwest and Shurwest then transmitted the documents to MN Life.  Matthew and Al both told us that Ms. Schulze-Miller was fired over offering this program and that they, Heritage,  could not believe that the CEO of Shurwest did not know anything about it.  They also said over and over, "your money is safe if we have to we will sue Shurwest because they were the ones that recommended this program to us".  Al also told me that he has "known Ron Shurts the CEO of Shurwest for over 20 years.  He said this statement to me and Cletus numerous times, both in person and on weekly telephone calls after FIP's collapse.

29.   Shurwest also directed Matthew and Heritage regarding the information they needed to obtain from me and Cletus and transmitted instructions from MN Life to Matthew and Heritage.

30.   I am also informed and believe that there were numerous other retirees such as me and Cletus who lost their retirement funds through Defendants' Structured Payment program. There were at least 12 other individuals with Heritage alone, all of whom reside in California. Attached hereto as Exhibit 2 is a true and correct copy of the Retainer Agreement from the Law Office of James A. Anton

that Heritage, Al, and Matthew attempted to convince me to sign. It includes the names, ages, and addresses of numerous Heritage clients who invested in the Structured Settlement program.

31.  As a direct result of the additional stress from seeing the bulk of my savings disappear, I have suffered severe physical symptoms. I have had to deal with chronic insomnia that gets so bad sometimes I require prescription medication to sleep. The stress has exacerbated my high blood pressure and my doctor has put me on an antidepressant just so that I can perform my daily functions. I have never in my life been on an antidepressant before. I've had to increase the dosage of prescription medications I take for my high blood pressure.

32.  As a result of the severe financial distress my husband and I have been placed under due to Defendants and the collapse of the Structured Settlement program and losing the bulk of our savings, I have had to resume working again.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct and that this declaration was executed on October 29, 2018 in Santa Clara California.

Kolette A. Page