# Exhibit 1

**FIP LLC**

## ACCEPTANCE OF FUTURE INCOME STREAM PURCHASE

The Purchaser hereby acknowledges receipt of the final and fully-executed copy of the FIP LLC Purchase Agreement (the "Purchase Agreement"), (PR# 3188); and the Purchaser accepts all of the terms and conditions contained within each section of the Purchase Agreement, as identified below:

1. FIP LLC Purchase Agreement between Goldstar Trust Company, LLC FBO Kolette A. Page, IRA (the "Purchaser") and FIP LLC, dated January 10, 2017 (the "Purchase Agreement");

2. Completed Exhibit A-1 through Exhibit A - 30, to the Purchase Agreement, setting forth all of the cash flows purchased by Purchaser and comprising the Purchased Asset (as defined in the Purchase Agreement);

3. Exhibit B to the Purchase Agreement; and

4. Exhibit C to the Purchase Agreement

By signing below, I hereby confirm that I have reviewed and accept all of the terms and conditions contained in the above mentioned documents.

Purchaser:

Signed: _____ Date: _____
(Custodian: Goldstar Trust Company, LLC FBO, Kolette A. Page, IRA

IRA Owner:

Signed: _____ Date: 1-20-17

Accepted By:
FIP LLC
2505 Anthem Village Drive, #E-578
Henderson, NV 89052

_____
Glorilyn Cusi
Signature

**FIP LLC**

# FIP, LLC QUALIFIED PURCHASE AGREEMENT

**WHEREAS**, this FIP LLC Purchase Agreement dated _____12|16|16_____ (the "**Agreement**"), is by and among **FIP LLC**, and its designees, successors and assigns ("**FIP**"), a Delaware Limited Liability Company located at 2505 Anthem Village Drive, #E-578 Henderson, NV 89052 and ___Goldster Trust FBO Vol, TO Page___ *(Example: Goldstar Trust Co. LLC FBO, John Smith, IRA)* (the "**Purchaser**"), for the benefit and at the direction of the owner of the IRA account (the "**IRA Owner**").

**WHEREAS**, contemporaneously with the execution of this Agreement, Purchaser at the direction of the IRA Owner, will execute and submit to FIP the Purchase Request attached hereto as **Exhibit B** identifying the characteristics of the Purchased Asset (as defined below) Purchaser wishes to purchase;

**WHEREAS**, the Purchaser, at the direction of the IRA Owner, has or will deposit into the Escrow Account (as defined below) managed by the Escrow Agent (as defined below) a sum equal to the Purchase Price (as defined below);

| **By Personal or Cashier's Check:** | **By Wire Transfer:** |
|---|---|
| Make Checks Payable to: | SunTrust Bank |
| Agee Fisher Barrett, LLC | Wire Ref: Agee Fisher Barrett, LLC |
| Ref Account # ▮▮▮▮ | Routing # ▮▮▮▮ |
| | ▮▮▮▮ |
| Mail to: | |
| Agee Fisher Barrett, LLC | |
| Attn: Autumn Langley | |
| 750 Hammond Drive, Bldg. 17 | |
| Atlanta, GA 30328 | |

*IN BOTH CASES PLEASE INCLUDE IRA OWNER'S NAME*

**WHEREAS**, FIP will purchase on behalf of the IRA Owner the right to receive over time one or more income payments comprised of fixed, pre-determined payments at a specific discount rate made monthly satisfying the characteristics identified by the IRA Owner in the Purchase Request (the "**Purchased Asset**") from an individual or individuals entitled to such payments (collectively, the "**Seller**");

**WHEREAS**, the specific income payments comprising the Purchased Asset will be identified to the Purchaser in the final closing documents pursuant to a completed copy of **Exhibit A** for each such income payment purchased from a Seller and comprising part of the Purchased Asset;

**WHEREAS**, as consideration for the sale of the Purchased Asset, FIP shall release the purchase price listed on **Exhibit A**, attached hereto (the "**Purchase Price**") as set forth in this Agreement; and

**WHEREAS**, upon the closing of the transactions contemplated herein, and for the term of this Agreement, FIP shall direct the Seller to remit the payments comprising the Purchased Asset to an account established by FIP and thereafter to the Purchaser.

**NOW, THEREFORE**, in consideration of the foregoing recitals, and terms, conditions and covenants hereinafter set forth, and other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Sale of Purchased Asset; Payment of Purchase Price**. Pursuant to the terms and conditions of this Agreement, and for the Term (as defined on **Exhibit A**), upon the final closing of the transactions contemplated herein, which shall occur upon FIP's receipt from Purchaser of a signed acknowledgement that Purchaser has reviewed and

approved the cash flows comprising the Purchased Asset (the "**Closing**") FIP will sell, transfer and convey all right, title and interest in and to the Purchased Asset to Purchaser in return for the Purchase Price.

2.  **Establishment of Payment Account; Remittance of Purchased Asset**. Upon the Closing and until the end of the Term, FIP will direct the Seller to forward all payments comprising the Purchased Asset to an account established by FIP (the "**Payment Account**"), and will direct such payments from the Payment Account to the Purchaser.

3.  **Funding of Escrow Account**. In connection with and simultaneous to the execution and submission of the Purchase Request, Purchaser, at the direction of the IRA Owner, shall cause funds in the full amount of the Purchase Price to be wired to the Escrow Account identified above. The Purchase Price will be released from the Escrow Account by Escrow Agent as set forth in the terms of this Agreement.

4.  **Survivor Beneficiary**. If the Seller of cash flows comprising the Purchased Asset designates a survivor beneficiary upon the Seller's death, then FIP may require such survivor beneficiary to agree to be bound by the terms of the underlying sale agreement between FIP and the Seller (the "**Underlying Sale Agreement**"), and to forward all such payments comprising the Purchased Asset as per the terms of such Underlying Sale Agreement.

5.  **Representations and Warranties of FIP**. As of the date of the Closing, FIP hereby makes the following representations, warranties and acknowledgements to and for the benefit of Purchaser and IRA Owner.

5.1.  *Organization and Good Standing*. FIP is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Nevada   and has organization power and authority to own its properties and to conduct its business as such properties shall then be owned and such business is then conducted.

5.2.  *Power and Authority*. FIP has full power, authority and right to execute and deliver this Agreement, and has full power and authority to perform its obligations hereunder, and has taken all necessary action to authorize and has duly authorized the execution, delivery and performance of this Agreement and the performance of such obligations.

5.3.  *Binding Obligation*. This Agreement constitutes the legal, valid and binding obligations of FIP enforceable against FIP in accordance with its terms, except as enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium and other similar laws affecting creditors' rights generally or by general principles of equity.

6.  **Representations and Warranties of Purchaser and IRA Owner**.

6.1.  *Competency and Consent*. Purchaser and IRA Owner are competent to enter into this Agreement and has voluntarily entered into this Agreement as an act of free will and with full capacity to understand the terms and conditions contained herein.

6.2.  *Binding Obligation*. This Agreement constitutes the legal, valid and binding obligations of Purchaser and IRA Owner enforceable against Purchaser and IRA Owner in accordance with its terms, except as enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium and other similar laws affecting creditors' rights generally or by general principles of equity.

6.3.  *Risks of Purchased Asset*. FIP has put mechanisms in place which it believes will protect the Purchaser's right to receive the payments comprising the Purchased Asset on behalf of the IRA Owner; however, IRA Owner understands and acknowledges that there are multiple risks associated with the purchase of the Purchased Asset. These risks include, but are not limited to those listed below. By initialing next to each risk listed below, the IRA Owner acknowledges and agrees that he or she has read, fully understands and accepts the risks of purchasing the Purchased Asset.

**6.3.1** *Risk of Seller Breach*. Receipt by Purchaser of the payments comprising the Purchased Asset is dependent upon the Seller adhering to the terms of the Underlying Sale Agreement. If the Seller breaches the terms of the Underlying Sale Agreement and fails to make payments as scheduled, and there are insufficient funds in the Reserve Account (as defined in Section 7.1) to cover such payments and FIP is unable to procure a Replacement Purchased Asset (as defined in Section 7.2), Purchaser may lose some or all of the Purchase Price, and may not receive all of the payments comprising the Purchased Asset.

**6.3.2** *Risk of Seller Bankruptcy*. If the Seller declares bankruptcy, and the bankruptcy court does not treat the sale of the Purchased Asset as a true sale, but rather as a loan or an unsecured obligation, and there are insufficient funds in the Reserve Account (as defined in Section 7.1) to cover such payments and FIP is unable to procure a Replacement Purchased Asset (as defined in Section 7.2), Purchaser may lose some or all of the Purchase Price, and may not receive all of the payments comprising the Purchased Asset.

**6.3.3** *Risk of Pension Obligor Failure/Insolvency*. The payments comprising the Purchased Asset are derived from pension obligations owed to individuals, typically from companies with which these individuals were previously employed. If the company pension plan obligated to make the payments comprising the Purchased Asset, becomes insolvent, declares bankruptcy or otherwise reneges on the obligation to make the payments comprising the Purchased Asset to the Seller prior to the time that the Purchaser has received all payment comprising the Purchased Asset, then Purchaser will lose some or all of the Purchase Price, and will not receive all of the payments comprising the Purchased Asset. **THE RISK SET FORTH IN THIS SECTION 6.3.3 IS NOT MITIGATED BY OR PROTECTED AGAINST BY THE PROTECTIONS SET FORTH IN SECTION 7 HEREIN.**

**6.3.4** *Risk of Temporary Shortfall Account and Reserve Account Depletion*. As described in Section 7.1, in order to mitigate some of the risk that a Seller fails to forward a payment as agreed FIP will establish a Shortfall Account and a Reserve Account. Neither the Shortfall Account nor the Reserve Account are established for the sole or specific benefit of the Purchaser, and each will only contain or have access to a limited amount of funds. FIP will have no obligation to contribute any additional funds to increase the sum held in the Shortfall Account or the Reserve Account. In the event that other sellers of cash flows to FIP, subsequently re-sold by FIP to other purchasers, fail to forward payments as agreed it is possible that the Shortfall Account and the Reserve Account will be depleted covering obligations to other purchasers and that no funds will remain to cover any payments to the Purchaser. **THE EXISTENCE OF THE SHORTFALL ACCOUNT AND THE RESERVE ACCOUNT DOES NOT GUARANTEE PURCHASER WILL RECEIVE ALL PAYMENTS COMPRISING THE PURCHASED ASSETS.**

**6.3.5** *Risk of Survivor Beneficiary Breach*. In instances where the Seller has named a survivor beneficiary for the cash flows received by such Seller in the event of the Seller's death, FIP has required such survivor beneficiary to sign an agreement pledging to honor the terms of the sale of the cash flow by the Seller to FIP. It is possible, however, that such beneficiary will breach the terms of the agreement with FIP, and if FIP is unable to procure a Replacement Purchased Asset (as defined in Section 7.2), Purchaser may lose some or all of the Purchase Price, and may not receive all of the payments comprising the Purchased Asset.

6.3.6 *No Governmental Backing.* The payments comprising the Purchased Asset are not deposits and are not insured by the Federal Deposit Insurance Corporation or any other governmental or non-governmental agency.

6.3.7 *Illiquid Asset.* There is currently no recognized secondary market for the Purchased Asset, and it is extremely unlikely that one will develop; thus, if Purchaser is directed by the IRA Owner to sell the Purchased Asset prior to the end of the Term, it will likely be difficult or impossible to do so. In order to receive all payments comprising the Purchased Asset, the Purchaser, as directed by the IRA Owner, will be required to hold the Purchased Asset until the expiration of the Term.

6.3.8 *Prohibitions in Law.* U.S. federal law currently prohibits the assignment or alienation of pension payments for both military and non-military pensions. However, FIP believes the law in the area of what constitutes an "assignment or alienation" is unsettled. For example, some courts have held the sale of cash flows from military pensions, where the purchased cash flows are deposited into an account controlled by the purchaser, are prohibited by federal law, while others have held such transactions are not prohibited. FIP does not have the purchased cash flows deposited into an account it controls, nor assigned directly to an escrow account, but instead has the purchased payment amount forwarded to a purchaser after the seller has taken receipt of the funds. FIP is not aware of any case which has held that the sale of a pension payment is prohibited by federal law after receipt of the funds by the seller, or any case which has held that the sale of a non-military pension is prohibited by federal law. Under its contract, FIP believes the sale of the Purchased Asset does not constitute a prohibited assignment or alienation. This may, however, change and the federal or state governments may pass and implement laws specifically prohibiting the sale of military and non-military pensions in transactions such as those contemplated in this Agreement, even where the purchased cash flows are not deposited in an account controlled by the purchaser. In the event laws prohibiting such transactions were passed, it is unknown whether the Purchaser, on behalf of the IRA Owner, would receive all of the payments comprising the Purchased Asset, and FIP may not be able to recover any of the purchase price paid to the Seller resulting in the IRA Owner suffering a significant loss on the Purchase Price of the Purchased Asset.

6.3.9 *No Guarantees of Payment.* While FIP has taken certain steps (described in Section 7 below) to mitigate some of the risks set forth in this Section 6.3, **FIP MAKES NO GUARANTEE PURCHASER WILL RECEIVE ALL PAYMENTS COMPRISING THE PURCHASED ASSET, OR THAT IRA OWNER WILL RECEIVE BACK THE PURCHASE PRICE OR ANY AMOUNT IN EXCESS THEREOF.** The mechanisms put in place by FIP to mitigate some of the risks of purchasing the Purchased Asset may not cover the payments comprising the Purchased Asset indefinitely.

6.3.10 *Characterization of Sale Transactions as Loans.* FIP has undertaken good faith efforts to structure the purchase of the cash flows comprising the Purchased Asset from the Seller as a sale, rather than a loan, transaction. Notwithstanding these efforts, FIP has received requests for information and/or subpoenas from state regulators seeking documents and information in order to permit such regulators to make their own determination of whether these transactions are loans or sales transactions. In the event that these transactions are determined to be loans, rather than purchases, by the pertinent regulator and if FIP cannot obtain an appropriate lenders license in the pertinent jurisdiction, it is possible that state regulators may require FIP to cease collecting the cash flows comprising the Purchased Asset with the result that

purchasers of cash flows in the impacted jurisdictions will not receive all payments comprising the Purchased Asset.

6.4.    *Sophistication of IRA Owner*.  The IRA Owner is sufficiently sophisticated, knowledgeable and experienced in financial and business matters as to be capable of determining and evaluating the merits and risks of purchasing the Purchased Asset and to be capable of protecting the Purchaser's and IRA Owner's interests in connection with such purchase.

6.5.    *Suitability*.  The IRA Owner has determined, based on his or her own independent review and such professional advice as her or she has deemed appropriate under the circumstances, that the acquisition of the Purchased Asset by the Purchaser at the IRA Owner's direction: (i) is fully consistent with his or her financial needs, objectives and condition, and (ii) is fit, proper and suitable, notwithstanding the risks inherent in purchasing the Purchased Asset, and has directed the Purchaser to enter into this Agreement and purchase the Purchased Asset.

6.6.    *Payment of Taxes*.  During the term of this Agreement, IRA Owner shall timely pay all federal and state income taxes, and any and all other taxes which IRA Owner is required to pay, both in connection the Purchased Asset and otherwise, and under no circumstances will FIP have any responsibility for such taxes.

6.7.    *Further Assurances; Cooperation*.  Purchaser and IRA Owner agree to execute and deliver any and all other documents that may be required for FIP to secure the Purchaser's rights to the Purchased Asset.  Purchaser and IRA Owner further agree to take any and all other actions as may be necessary or appropriate to fully give effect to the intentions of the parties under this Agreement.

7.    **Purchaser Protections**.  FIP has established certain mechanisms and processes intended to reduce, but not eliminate, the risk of disruption of the payments comprising the Purchased Asset.  Purchaser and IRA Owner understand and accept that because the cash flows comprising the Purchased Asset must be forwarded by the Original Owner each month, FIP cannot and does not guarantee that disruptions in such payments will not occur. The funds available in the shortfall and reserve account are meant to protect the purchaser/IRA Owner as it relates to two primary risks: 1) the risk that the Seller dies before end of the term; and 2) failure by the Seller to make the payments required by the Underlying Sale Agreement (except, as noted in Section 6.3.3 above, for instances in which the failure to make the payments is a result of the entity obligated to make such payments to the Seller failing to do so) and 3) the event that these transactions are determined to be loans, rather than purchases.

7.1.    *Establishment of Shortfall Account and Reserve Account*.  In order to mitigate some of the risks set forth in Section 6 and Section 7 of this Agreement, FIP has established two accounts for the benefits of Purchasers: 1) an account containing a limited amount of funds to cover immediate shortfalls in the event an Seller fails to forward a payment as promised (the "**Shortfall Account**"); and 2) a reserve account (the "Reserve Account") into which FIP will deposit a portion of the profits it derives from its business, the proceeds of which will be available to reimburse FIP or, under certain circumstances, the Purchaser, in the event an Seller fails to forward the payments comprising the Purchased Asset as promised (except as set out in Section 6.3.3).  In the event that the Seller breaches the obligation under the Underlying Sale Agreement to make the required payments, or the payments comprising the Purchased Asset are otherwise interrupted, assuming the Shortfall Account has a positive balance and that the failure is not a result of the circumstances described in Section 6.3.3, FIP will cover temporarily any interruption in payments to the Purchaser by making such payments for a limited period of time out of the Shortfall Account.  As set forth in Section 7.2, if FIP determines it is necessary, it will find a replacement cash flow for the Purchaser and FIP will seek reimbursement for the related expense from the Reserve Account.  FIP has no obligation to add any additional funds to the Shortfall Account or the Reserve Account in order to cover losses suffered by the Purchaser.  **FIP DOES NOT GUARANTEE THAT FUNDS WILL BE AVAILABLE IN EITHER THE SHORTFALL ACCOUNT OR THE RESERVE ACCOUNT TO CONTINUE PAYMENTS TO THE PURCHASER FOR ANY SPECIFIC PERIOD OF TIME.**

7.2.   *Substitute Purchased Asset*. In the event that the Seller breaches its obligations as described in Section 7.1, in addition to, or instead of, making any payments from the Shortfall Account, assuming the Reserve Account has sufficient funds and that the failure is not a result of the circumstances described in Section 6.3.3, FIP may locate a replacement cash flow and substitute it as the Purchased Asset (the "**Replacement Purchased Asset**") under the terms of this Agreement, and will then seek reimbursement from the Reserve Account for such expense.

7.3.   *Purchaser's Authorization*. Purchaser hereby authorizes FIP to undertake such actions as FIP deems necessary to effectuate the intent of this Section 7. Specifically, FIP shall have the right to substitute a Replacement Purchased Asset for a Purchased Asset in its sole and absolute discretion, so long as the Replacement Purchased Asset results in payments in an amount identical to those purchased by the Purchaser. FIP shall provide notice to the Purchaser of such substitution, but, so long as the economics of the Replacement Purchased Asset are identical to the Purchased Asset, Purchaser shall have no right to approve or disapprove of such substitution.

7.4.   *Assignment of Underlying Sale Agreement*. In connection with the sale of the Purchased Asset to Purchaser by FIP, FIP hereby assigns all of its rights, title and interest in and to the Underlying Sale Agreement(s) to the Purchaser; provided, however, that notwithstanding such assignment, Purchaser shall have no right to proceed directly against any Seller unless and until: (i) an Seller breaches an Underlying Sale Agreement and (ii) FIP is unable, pursuant to Section 7.2, to locate a Replacement Purchased Asset within ninety (90) business days of such breach by the Seller and (iii) FIP is unable to act on behalf of the Purchaser in connection with pursuing an action against the Seller. And, provided, further, that in the event FIP procures a Replacement Purchased Asset the Underlying Sale Agreement for the initial Purchased Asset shall no longer be subject to the terms of this Section 7.4, and the Underlying Sale Agreement for the Replacement Purchased Asset shall, without the need for further action on the part of FIP or Purchaser, automatically be substituted and subject to the terms of this Provision Section 7.4, and Exhibit A shall be revised accordingly.

7.5.   *Grant of Irrevocable Limited Power of Attorney*. In order to facilitate FIP's ability to obtain payment from Sellers who are late or delinquent in making such payments, the Purchaser shall execute the Irrevocable Limited Power of Attorney, attached hereto as **Exhibit C**.

**8.   Release of Funds Pre-Closing; Closing; Closing Book; Resolution of Objections.**

8.1.   *Release of Funds Pre-Closing to Seller*. Upon satisfaction of the following conditions, the Escrow Agent will release to the Seller the purchase price due to the Seller under the terms of the Underlying Sale Agreement, and to FIP the service fee FIP has earned in connection with the sale of that cash flow to the Purchaser:

   8.1.1   *Confirmation that the Underlying Seller has set up a means for monthly payment to an account designated for the benefit of the Purchaser; and*

   8.1.2   *FIP's review and determination that the documents comprising the Underlying Sale Documents are complete.*

8.2.   *Closing*. The Closing of the transactions contemplated herein between FIP and the Purchaser are contingent upon the occurrence of the following conditions:

   8.2.1   *Accuracy of Representations and Warranties*.   The accuracy of FIP's and Purchaser's representations and warranties contained herein; and

   8.2.2   *Delivery and Approval of Closing Book*.   FIP shall compile and deliver to the Purchaser all documents comprising the closing package (the "**Closing Book**"), including appropriately completed copies of Exhibit A identifying the specific cash flows comprising the Purchased Asset. Upon receipt of the Closing Book, the Purchaser and the IRA Owner shall have seven (7)

business days to review the documents contained in the Closing Book (the **"Purchaser Review Period"**) and to **(i)** sign the Acceptance of FIP LLC Payment Purchase Receipt provided therewith (the **"Acceptance Receipt"**), or **(ii)** notify FIP of any objections to the underwriting of the Purchased Asset (a **"Purchaser Objection Notice"**). A Purchaser Objection Notice shall set out in reasonable detail the basis of the Purchaser's objection(s) to the Closing Book and/or underwriting of the Purchased Asset. The Closing of the transactions contemplated herein between the Purchaser and FIP cannot occur until the Purchaser and IRA Owner have signed and returned the Acceptance Receipt to FIP.

8.2.3   *Resolution of Purchaser Objection Notice; Termination*.  FIP shall have ninety (90) business days from the date of receipt of a Purchaser Objection Notice to: 1) locate another cash flow to replace the Purchased Asset if such action will resolve the basis for the Purchaser Objection Notice; or 2) take any such other actions as are reasonable and necessary to resolve the Purchaser Objection Notice. If FIP is unable to locate an acceptable replacement Purchased Asset, or otherwise resolve the Purchaser Objection Notice within ninety (90) business days of receipt of such notice, this Agreement shall be null and void specifically with respect to any cash flow comprising the Purchased Asset that cannot be replaced, but shall remain valid with respect to any cash flows comprising the Purchased Asset that do not require replacement. FIP shall return all funds comprising the portion of the Purchase Price attributable to any cash flow comprising the Purchased Asset which cannot be replaced under the terms of this Section 8.2.3 to the Purchaser.

## 9.  Indemnification; Survival.

9.1.   *Indemnification*.  Purchaser and IRA Owner hereby agrees to indemnify FIP and its respective officers, directors, managers, partners, members, employees and agents, and any assignees, designees or successors of same (the "**Indemnified Parties**") against and agree to hold the Indemnified Parties harmless from any and all damages, losses, liabilities and expenses (including, without limitation, reasonable expenses of investigation and reasonable attorneys' fees and expenses in connection with any action, suit or proceeding), incurred or suffered by the Indemnified Parties arising out of, resulting from, or related to: (i) any misrepresentation or breach of any representation or warranty made by Purchaser and IRA Owner pursuant to this Agreement or any document executed in connection with the transactions contemplated by this Agreement; (ii) any breach of a covenant or agreement made or to be performed by Purchaser or IRA Owner pursuant to this Agreement, (iii) any breach or violation of any applicable federal or state law by Purchaser or IRA Owner in connection with this Agreement.

9.2.   *Survival*.  Purchaser's and IRA Owner's obligation to indemnify the Indemnified Parties shall survive the termination of this Agreement.

## 10.  Miscellaneous Provisions.

10.1.   *Severability*.  If any one or more of the covenants, agreements, provisions or terms of this Agreement shall for any reason whatsoever be held invalid or unenforceable, then such covenants, agreements, provisions or terms shall be deemed severable from the remaining covenants, agreements, provisions and terms of this Agreement and shall in no way affect the validity or enforceability of the other provisions of this Agreement. If this Agreement relates to periodic payments received from the Department of Defense or the Department of Veterans' Affairs, and in the event any term or provision of this Agreement is determined to be void, voidable, invalid or unenforceable for any reason by one of these Departments, or by codes or regulations related to one of the Departments, such determination shall not affect the validity or enforceability of such term or provision with respect to the remainder of the Agreement.

10.2.   *Notices*.  All notices hereunder shall be in writing and shall be given in person, sent by registered or certified mail (return receipt requested), or sent by electronic mail or facsimile. Notices that are properly delivered

shall be deemed to have been given upon actual delivery. Notices shall be given to Purchaser and IRA Owner at the respective addresses set forth on **Exhibit A** attached hereto. Notices shall be given to FIP at the address indicated for FIP on the signature page hereof. Any party to this Agreement may direct notices to any other address as that party may designate by advance written notice. A copy of any notice to any party shall also be sent to that party's legal counsel if such party is represented.

10.3.   *Entire Agreement*.  This Agreement and the exhibits hereto constitute the entire and final agreement between the parties with respect to the subject matter hereof. No party is entering into this Agreement in reliance on, and this Agreement shall not be contradicted or supplemented by, any prior or contemporaneous condition, discussion, promise, statement, understanding, or undertaking, commitment or other agreement or document.

10.4.   *Assignment*.  The Purchaser shall not assign its rights or obligations under the terms of this Agreement except for such assignment as is made in writing and approved in advance by FIP, which approval shall not be unreasonably withheld.

10.5.   *Amendments/Modifications Binding; No Beneficiaries*.  Except as otherwise set forth in this Agreement, all amendments to or modifications of this Agreement shall be binding upon the parties, despite any lack of separate or additional consideration therefore, so long as such amendments or modifications shall be in writing and signed by Purchaser and FIP. The parties acknowledge and agree that there are no other third party beneficiaries of any promises, obligations or representations made herein.

10.6.   *Governing Law; Jurisdiction and Venue*.  In all respects, including all matters of construction, validity and performance, this agreement and the obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of California applicable to contracts made and performed in such state, (without regard to the principles thereof regarding conflict of laws). Purchaser and IRA Owner hereby consent and agree that the state or federal courts located in California shall have non-exclusive jurisdiction to hear and determine any claims or disputes pertaining to this Agreement and/or any related agreement, to any matter arising out of, or related to, this Agreement and/or any related agreements; and further provided, that nothing in this Agreement shall be deemed or operate to preclude FIP from bringing suit or taking other legal action in any other jurisdiction to enforce its right under this Agreement, or to enforce a judgment or other court order in favor of FIP. Purchaser expressly submits and consents in advance to such jurisdiction in any action or suit commenced in any such court, and Purchaser and IRA Owner hereby waive any objection that it may have based upon lack of personal jurisdiction, improper venue or forum non convenience and hereby consents to the granting of such legal or equitable relief as is deemed appropriate by such court.

10.7.   *Jury Trial Waiver*.  THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION, CONTROVERSY OR PROCEEDING OF ANY KIND ON ANY MATTER ARISING OUT OF, RELATING TO, IN CONNECTION WITH, OR INCIDENT TO THIS AGREEMENT OR ANY TRANSACTIONS IT CONTEMPLATES OR THE ENFORCEMENT HEREOF, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW OR DEEMED BY A COURT OF LAW TO BE AGAINST PUBLIC POLICY.  THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS.

10.8.   *Waiver*.  Any parties' failure to insist in any one or more instances upon strict performance by another party of any of the terms of this Agreement shall not be construed as a waiver of any continuing or subsequent failure to perform or a delay in performance of any term hereof.

10.9.   *No Construction Against Drafter*.  Purchaser and IRA Owner have been or have had the opportunity to be represented by counsel throughout the negotiation and signing of this Agreement and all ancillary documents to this Agreement and, therefore, while this Agreement is effective or after its termination, neither Purchaser nor IRA Owner shall claim or assert that any provision of this Agreement or ancillary documents should be construed against the drafter of this Agreement and ancillary documents.

10.10.   *Counterparts*.  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

[SIGNATURES ON FOLLOWING PAGE]

FIP LLC Purchase Agreement   //   p. 10

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the date first written above.

**Purchaser**                                                    **IRA Owner**

SIGNATURE (Signed by Custodian)                    PRINTED NAME (Example: John Smith)

*Carla McCaslin*                                              *Celette Page*

PURCHASER (Example: Provident Trust Group LLC FBO, John Smith)   SIGNATURE

GoldStar Trust FBO Kolette Page                    *Celette Page*

DATE                                                             DATE

1.3.17                                                          *12-16-16*

Agent


PRINTED NAME

Matthew Beck

SIGNATURE


DATE

12-16-16

**Accepted by**

FIP LLC
2505 Anthem Village Drive, #E-578
Henderson, NV 89052

SIGNATURE                                            DATE
        Glorilyn Cusi                                    1/10/17

FIP LLC

FUTURE INCOME PAYMENTS, LLC

## EXHIBIT A

## TRANSACTION DETAILS

| | |
|---|---|
| PR Number: | PR 3188 / Allan C. Roach |
| Purchaser:<br><br>Purchaser's Address: | Goldstar Trust Company, LLC FBO Kolette A. Page, IRA<br><br>1401 4th Ave., PO Box 719, Canyon, TX 79015 |
| IRA Owner:<br><br>IRA Owner's Address: | Kolette A. Page<br><br>1052 N Damato Dr, Covina, CA 91724 |
| Obligor of Purchased Asset | Department of Veterans Affairs |
| Purchase Price for Purchased Asset: | $ 15,314.60 |
| Discount Rate: | 7.00% |
| Term of Agreement (the "Term"): | 60 months |
| Monthly Cash Flow: | $     300.00 |

A-1

FUTURE INCOME PAYMENTS, LLC

## EXHIBIT A

## TRANSACTION DETAILS

| | |
|---|---|
| PR Number: | PR 3188 / Ardyth L. Elms |
| Purchaser: | Goldstar Trust Company, LLC FBO Kolette A. Page, IRA |
| Purchaser's Address: | 1401 4th Ave., PO Box 719, Canyon, TX 79015 |
| IRA Owner: | Kolette A. Page |
| IRA Owner's Address: | 1052 N Damato Dr, Covina, CA 91724 |
| Obligor of Purchased Asset | California Public Employees Retirement System |
| Purchase Price for Purchased Asset: | $    223.59 |
| Discount Rate: | 7.00% |
| Term of Agreement (the "Term"): | 60 months |
| Monthly Cash Flow: | $    4.38 |

A-2

FUTURE INCOME PAYMENTS, LLC

## EXHIBIT A

### TRANSACTION DETAILS

| | |
|---|---|
| PR Number: | PR 3188 / James G. Record |
| Purchaser: | Goldstar Trust Company, LLC FBO Kolette A. Page, IRA |
| Purchaser's Address: | 1401 4th Ave., PO Box 719, Canyon, TX 79015 |
| IRA Owner: | Kolette A. Page |
| IRA Owner's Address: | 1052 N Damato Dr, Covina, CA 91724 |
| Obligor of Purchased Asset | Department of Veterans Affairs |
| Purchase Price for Purchased Asset: | $  15,314.60 |
| Discount Rate: | 7.00% |
| Term of Agreement (the "Term"): | 60 months |
| Monthly Cash Flow: | $     300.00 |

A-3

FUTURE INCOME PAYMENTS, LLC

## EXHIBIT A

## TRANSACTION DETAILS

| | |
|---|---|
| PR Number: | PR 3188 / Jeffery L. Wahl |
| Purchaser:<br><br>Purchaser's Address: | Goldstar Trust Company, LLC FBO Kolette A. Page, IRA<br><br>1401 4th Ave., PO Box 719, Canyon, TX 79015 |
| IRA Owner:<br><br>IRA Owner's Address: | Kolette A. Page<br><br>1052 N Damato Dr, Covina, CA 91724 |
| Obligor of Purchased Asset | Department of Veterans Affairs |
| Purchase Price for Purchased Asset: | $  15,314.60 |
| Discount Rate: | 7.00% |
| Term of Agreement (the "Term"): | 60 months |
| Monthly Cash Flow: | $     300.00 |

A-4

FUTURE INCOME PAYMENTS, LLC

## EXHIBIT A

### TRANSACTION DETAILS

| | |
|---|---|
| PR Number: | PR 3188 / Lynda Kay Wilkinson |
| Purchaser: | Goldstar Trust Company, LLC FBO Kolette A. Page, IRA |
| Purchaser's Address: | 1401 4th Ave., PO Box 719, Canyon, TX 79015 |
| IRA Owner: | Kolette A. Page |
| IRA Owner's Address: | 1052 N Damato Dr, Covina, CA 91724 |
| Obligor of Purchased Asset | Department of Veterans Affairs |
| Purchase Price for Purchased Asset: | $  15,314.60 |
| Discount Rate: | 7.00% |
| Term of Agreement (the "Term"): | 60 months |
| Monthly Cash Flow: | $     300.00 |

A-5

FUTURE INCOME PAYMENTS, LLC

## EXHIBIT A

### TRANSACTION DETAILS

| | |
|---|---|
| PR Number: | PR 3188 / Marva Lee Johnson |
| Purchaser: | Goldstar Trust Company, LLC FBO Kolette A. Page, IRA |
| Purchaser's Address: | 1401 4th Ave., PO Box 719, Canyon, TX 79015 |
| IRA Owner: | Kolette A. Page |
| IRA Owner's Address: | 1052 N Damato Dr, Covina, CA 91724 |
| Obligor of Purchased Asset | Office of Personnel Management |
| Purchase Price for Purchased Asset: | $  15,314.60 |
| Discount Rate: | 7.00% |
| Term of Agreement (the "Term"): | 60 months |
| Monthly Cash Flow: | $     300.00 |

A-6

FUTURE INCOME PAYMENTS, LLC

## EXHIBIT A

### TRANSACTION DETAILS

| | |
|---|---|
| PR Number: | PR 3188 / Nola Julia Runk |
| Purchaser: | Goldstar Trust Company, LLC FBO Kolette A. Page, IRA |
| Purchaser's Address: | 1401 4th Ave., PO Box 719, Canyon, TX 79015 |
| IRA Owner: | Kolette A. Page |
| IRA Owner's Address: | 1052 N Damato Dr, Covina, CA 91724 |
| Obligor of Purchased Asset | Department of Veterans Affairs |
| Purchase Price for Purchased Asset: | $ 20,419.47 |
| Discount Rate: | 7.00% |
| Term of Agreement (the "Term"): | 60 months |
| Monthly Cash Flow: | $    400.00 |

A-7

FUTURE INCOME PAYMENTS, LLC

## EXHIBIT A

## TRANSACTION DETAILS

| | |
|---|---|
| PR Number: | PR 3188 / Paul O. Smith |
| Purchaser: | Goldstar Trust Company, LLC FBO Kolette A. Page, IRA |
| Purchaser's Address: | 1401 4th Ave., PO Box 719, Canyon, TX 79015 |
| IRA Owner: | Kolette A. Page |
| IRA Owner's Address: | 1052 N Damato Dr, Covina, CA 91724 |
| Obligor of Purchased Asset | Department of Veterans Affairs |
| Purchase Price for Purchased Asset: | $  15,314.60 |
| Discount Rate: | 7.00% |
| Term of Agreement (the "Term"): | 60 months |
| Monthly Cash Flow: | $     300.00 |

A-8

FUTURE INCOME PAYMENTS, LLC

## EXHIBIT A

### TRANSACTION DETAILS

| | |
|---|---|
| PR Number: | PR 3188 / Robert Clyde Mayo |
| Purchaser:<br><br>Purchaser's Address: | Goldstar Trust Company, LLC FBO Kolette A. Page, IRA<br><br>1401 4th Ave., PO Box 719, Canyon, TX 79015 |
| IRA Owner:<br><br>IRA Owner's Address: | Kolette A. Page<br><br>1052 N Damato Dr, Covina, CA 91724 |
| Obligor of Purchased Asset | Department of Veterans Affairs |
| Purchase Price for Purchased Asset: | $  20,419.47 |
| Discount Rate: | 7.00% |
| Term of Agreement (the "Term"): | 60 months |
| Monthly Cash Flow: | $      400.00 |

A-9

FUTURE INCOME PAYMENTS, LLC

## EXHIBIT A

## TRANSACTION DETAILS

| | |
|---|---|
| PR Number: | PR 3188 / Rosetta A. Townsend |
| Purchaser: | Goldstar Trust Company, LLC FBO Kolette A. Page, IRA |
| Purchaser's Address: | 1401 4th Ave., PO Box 719, Canyon, TX 79015 |
| IRA Owner: | Kolette A. Page |
| IRA Owner's Address: | 1052 N Damato Dr, Covina, CA 91724 |
| Obligor of Purchased Asset | Department of Veterans Affairs |
| Purchase Price for Purchased Asset: | $    6,376.49 |
| Discount Rate: | 7.00% |
| Term of Agreement (the "Term"): | 60 months |
| Monthly Cash Flow: | $    124.91 |

A-10

FUTURE INCOME PAYMENTS, LLC

## **EXHIBIT A**

## **TRANSACTION DETAILS**

| | |
|---|---|
| PR Number: | PR 3188 / Benjamin W. Hotchkiss |
| Purchaser: | Goldstar Trust Company, LLC FBO Kolette A. Page, IRA |
| Purchaser's Address: | 1401 4th Ave., PO Box 719, Canyon, TX 79015 |
| IRA Owner: | Kolette A. Page |
| IRA Owner's Address: | 1052 N Damato Dr, Covina, CA 91724 |
| Obligor of Purchased Asset | Department of Veterans Affairs |
| Purchase Price for Purchased Asset: | $ 15,314.60 |
| Discount Rate: | 7.00% |
| Term of Agreement (the "Term"): | 60 months |
| Monthly Cash Flow: | $ 300.00 |

A-11

FUTURE INCOME PAYMENTS, LLC

## EXHIBIT A

## TRANSACTION DETAILS

| | |
|---|---|
| PR Number: | PR 3188 / Cathy Helen Gee |
| Purchaser: | Goldstar Trust Company, LLC FBO Kolette A. Page, IRA |
| Purchaser's Address: | 1401 4th Ave., PO Box 719, Canyon, TX 79015 |
| IRA Owner: | Kolette A. Page |
| IRA Owner's Address: | 1052 N Damato Dr, Covina, CA 91724 |
| Obligor of Purchased Asset | Department of Veterans Affairs |
| Purchase Price for Purchased Asset: | $  15,314.60 |
| Discount Rate: | 7.00% |
| Term of Agreement (the "Term"): | 60 months |
| Monthly Cash Flow: | $     300.00 |

A-12

FUTURE INCOME PAYMENTS, LLC

## EXHIBIT A

### TRANSACTION DETAILS

| | |
|---|---|
| PR Number: | PR 3188 / Cheryl Ann Kluegl |
| Purchaser: | Goldstar Trust Company, LLC FBO Kolette A. Page, IRA |
| Purchaser's Address: | 1401 4th Ave., PO Box 719, Canyon, TX 79015 |
| IRA Owner: | Kolette A. Page |
| IRA Owner's Address: | 1052 N Damato Dr, Covina, CA 91724 |
| Obligor of Purchased Asset | Department of Veterans Affairs |
| Purchase Price for Purchased Asset: | $  15,314.60 |
| Discount Rate: | 7.00% |
| Term of Agreement (the "Term"): | 60 months |
| Monthly Cash Flow: | $     300.00 |

A-13

FUTURE INCOME PAYMENTS, LLC

## EXHIBIT A

### TRANSACTION DETAILS

| | |
|---|---|
| PR Number: | PR 3188 / Francis J. Myers |
| Purchaser: | Goldstar Trust Company, LLC FBO Kolette A. Page, IRA |
| Purchaser's Address: | 1401 4th Ave., PO Box 719, Canyon, TX 79015 |
| IRA Owner: | Kolette A. Page |
| IRA Owner's Address: | 1052 N Damato Dr, Covina, CA 91724 |
| Obligor of Purchased Asset | Department of Veterans Affairs |
| Purchase Price for Purchased Asset: | $ 15,314.60 |
| Discount Rate: | 7.00% |
| Term of Agreement (the "Term"): | 60 months |
| Monthly Cash Flow: | $ 300.00 |

A-14

FUTURE INCOME PAYMENTS, LLC

## EXHIBIT A

### TRANSACTION DETAILS

| | |
|---|---|
| PR Number: | PR 3188 / Georena L. Kuhns |
| Purchaser: | Goldstar Trust Company, LLC FBO Kolette A. Page, IRA |
| Purchaser's Address: | 1401 4th Ave., PO Box 719, Canyon, TX 79015 |
| IRA Owner: | Kolette A. Page |
| IRA Owner's Address: | 1052 N Damato Dr, Covina, CA 91724 |
| Obligor of Purchased Asset | Department of Veterans Affairs |
| Purchase Price for Purchased Asset: | $ 17,867.04 |
| Discount Rate: | 7.00% |
| Term of Agreement (the "Term"): | 60 months |
| Monthly Cash Flow: | $    350.00 |

A-15

FUTURE INCOME PAYMENTS, LLC

## EXHIBIT A

## TRANSACTION DETAILS

| | |
|---|---|
| PR Number: | PR 3188 / Jose A. Montanez Sr |
| Purchaser: | Goldstar Trust Company, LLC FBO Kolette A. Page, IRA |
| Purchaser's Address: | 1401 4th Ave., PO Box 719, Canyon, TX 79015 |
| IRA Owner: | Kolette A. Page |
| IRA Owner's Address: | 1052 N Damato Dr, Covina, CA 91724 |
| Obligor of Purchased Asset | Department of Veterans Affairs |
| Purchase Price for Purchased Asset: | $  20,419.47 |
| Discount Rate: | 7.00% |
| Term of Agreement (the "Term"): | 60 months |
| Monthly Cash Flow: | $     400.00 |

A-16

FUTURE INCOME PAYMENTS, LLC

## EXHIBIT A

## TRANSACTION DETAILS

| | |
|---|---|
| PR Number: | PR 3188 / Keish Rob Clinkscale |
| Purchaser: | Goldstar Trust Company, LLC FBO Kolette A. Page, IRA |
| Purchaser's Address: | 1401 4th Ave., PO Box 719, Canyon, TX 79015 |
| IRA Owner: | Kolette A. Page |
| IRA Owner's Address: | 1052 N Damato Dr, Covina, CA 91724 |
| Obligor of Purchased Asset | Department of Veterans Affairs |
| Purchase Price for Purchased Asset: | $  15,314.60 |
| Discount Rate: | 7.00% |
| Term of Agreement (the "Term"): | 60 months |
| Monthly Cash Flow: | $     300.00 |

A-17

FUTURE INCOME PAYMENTS, LLC

## EXHIBIT A

## TRANSACTION DETAILS

| | |
|---|---|
| PR Number: | PR 3188 / Kenneth T. Reynolds |
| Purchaser: | Goldstar Trust Company, LLC FBO Kolette A. Page, IRA |
| Purchaser's Address: | 1401 4th Ave., PO Box 719, Canyon, TX 79015 |
| IRA Owner: | Kolette A. Page |
| IRA Owner's Address: | 1052 N Damato Dr, Covina, CA 91724 |
| Obligor of Purchased Asset | Department of Veterans Affairs |
| Purchase Price for Purchased Asset: | $  15,314.60 |
| Discount Rate: | 7.00% |
| Term of Agreement (the "Term"): | 60 months |
| Monthly Cash Flow: | $     300.00 |

A-18

FUTURE INCOME PAYMENTS, LLC

## EXHIBIT A

## TRANSACTION DETAILS

| | |
|---|---|
| PR Number: | PR 3188 / Mary A. Bates |
| Purchaser:<br><br>Purchaser's Address: | Goldstar Trust Company, LLC FBO Kolette A. Page, IRA<br><br>1401 4th Ave., PO Box 719, Canyon, TX 79015 |
| IRA Owner:<br><br>IRA Owner's Address: | Kolette A. Page<br><br>1052 N Damato Dr, Covina, CA 91724 |
| Obligor of Purchased Asset | Department of Veterans Affairs |
| Purchase Price for Purchased Asset: | $  17,867.04 |
| Discount Rate: | 7.00% |
| Term of Agreement (the "Term"): | 60 months |
| Monthly Cash Flow: | $      350.00 |

A-19

FUTURE INCOME PAYMENTS, LLC

## EXHIBIT A

## TRANSACTION DETAILS

| | |
|---|---|
| PR Number: | PR 3188 / Raye Clinton Williams |
| Purchaser: | Goldstar Trust Company, LLC FBO Kolette A. Page, IRA |
| Purchaser's Address: | 1401 4th Ave., PO Box 719, Canyon, TX 79015 |
| IRA Owner: | Kolette A. Page |
| IRA Owner's Address: | 1052 N Damato Dr, Covina, CA 91724 |
| Obligor of Purchased Asset | Department of Veterans Affairs |
| Purchase Price for Purchased Asset: | $  25,524.34 |
| Discount Rate: | 7.00% |
| Term of Agreement (the "Term"): | 60 months |
| Monthly Cash Flow: | $     500.00 |

A-20

FUTURE INCOME PAYMENTS, LLC

## EXHIBIT A

## TRANSACTION DETAILS

| | |
|---|---|
| PR Number: | PR 3188 / Timothy W. Sparks |
| Purchaser: | Goldstar Trust Company, LLC FBO Kolette A. Page, IRA |
| Purchaser's Address: | 1401 4th Ave., PO Box 719, Canyon, TX 79015 |
| IRA Owner: | Kolette A. Page |
| IRA Owner's Address: | 1052 N Damato Dr, Covina, CA 91724 |
| Obligor of Purchased Asset | Department of Veterans Affairs |
| Purchase Price for Purchased Asset: | $  15,314.60 |
| Discount Rate: | 7.00% |
| Term of Agreement (the "Term"): | 60 months |
| Monthly Cash Flow: | $     300.00 |

A-21

FUTURE INCOME PAYMENTS, LLC

## EXHIBIT A

## TRANSACTION DETAILS

| | |
|---|---|
| PR Number: | PR 3188 / Ricky Lee Stiverson |
| Purchaser:<br><br>Purchaser's Address: | Goldstar Trust Company, LLC FBO Kolette A. Page, IRA<br><br>1401 4th Ave., PO Box 719, Canyon, TX 79015 |
| IRA Owner:<br><br>IRA Owner's Address: | Kolette A. Page<br><br>1052 N Damato Dr, Covina, CA 91724 |
| Obligor of Purchased Asset | Department of Veterans Affairs |
| Purchase Price for Purchased Asset: | $   7,913.57 |
| Discount Rate: | 7.00% |
| Term of Agreement (the "Term"): | 60 months |
| Monthly Cash Flow: | $     155.02 |

A-22

FUTURE INCOME PAYMENTS, LLC

## EXHIBIT A

### TRANSACTION DETAILS

| | |
|---|---|
| PR Number: | PR 3188 / Christine M. Konopka |
| Purchaser: | Goldstar Trust Company, LLC FBO Kolette A. Page, IRA |
| Purchaser's Address: | 1401 4th Ave., PO Box 719, Canyon, TX 79015 |
| IRA Owner: | Kolette A. Page |
| IRA Owner's Address: | 1052 N Damato Dr, Covina, CA 91724 |
| Obligor of Purchased Asset | County Employees' and Officers' Annuity and Benefit Fund of Coo |
| Purchase Price for Purchased Asset: | $   9,230.11 |
| Discount Rate: | 7.00% |
| Term of Agreement (the "Term"): | 60 months |
| Monthly Cash Flow: | $    180.81 |

A-23

FUTURE INCOME PAYMENTS, LLC

## EXHIBIT A

### TRANSACTION DETAILS

| | |
|---|---|
| PR Number: | PR 3188 / Dexter Tyrone Lail Sr |
| Purchaser: | Goldstar Trust Company, LLC FBO Kolette A. Page, IRA |
| Purchaser's Address: | 1401 4th Ave., PO Box 719, Canyon, TX 79015 |
| IRA Owner: | Kolette A. Page |
| IRA Owner's Address: | 1052 N Damato Dr, Covina, CA 91724 |
| Obligor of Purchased Asset | Department of Veterans Affairs |
| Purchase Price for Purchased Asset: | $  15,314.60 |
| Discount Rate: | 7.00% |
| Term of Agreement (the "Term"): | 60 months |
| Monthly Cash Flow: | $     300.00 |

Λ-24

FUTURE INCOME PAYMENTS, LLC

## EXHIBIT A

### TRANSACTION DETAILS

| | |
|---|---|
| PR Number: | PR 3188 / Dora Amador |
| Purchaser: | Goldstar Trust Company, LLC FBO Kolette A. Page, IRA |
| Purchaser's Address: | 1401 4th Ave., PO Box 719, Canyon, TX 79015 |
| IRA Owner: | Kolette A. Page |
| IRA Owner's Address: | 1052 N Damato Dr, Covina, CA 91724 |
| Obligor of Purchased Asset | McClatchy Company Retirement Plan |
| Purchase Price for Purchased Asset: | $  15,314.60 |
| Discount Rate: | 7.00% |
| Term of Agreement (the "Term"): | 60 months |
| Monthly Cash Flow: | $      300.00 |

A-25

FUTURE INCOME PAYMENTS, LLC

## EXHIBIT A

### TRANSACTION DETAILS

| | |
|---|---|
| PR Number: | PR 3188 / Jeannette Washington |
| Purchaser: | Goldstar Trust Company, LLC FBO Kolette A. Page, IRA |
| Purchaser's Address: | 1401 4th Ave., PO Box 719, Canyon, TX 79015 |
| IRA Owner: | Kolette A. Page |
| IRA Owner's Address: | 1052 N Damato Dr, Covina, CA 91724 |
| Obligor of Purchased Asset | Office of Personnel Management |
| Purchase Price for Purchased Asset: | $  25,524.34 |
| Discount Rate: | 7.00% |
| Term of Agreement (the "Term"): | 60 months |
| Monthly Cash Flow: | $     500.00 |

A-26

FUTURE INCOME PAYMENTS, LLC

## EXHIBIT A

### TRANSACTION DETAILS

| | |
|---|---|
| PR Number: | PR 3188 / Michael E. Loveland |
| Purchaser: <br><br> Purchaser's Address: | Goldstar Trust Company, LLC FBO Kolette A. Page, IRA <br><br> 1401 4th Ave., PO Box 719, Canyon, TX 79015 |
| IRA Owner: <br><br> IRA Owner's Address: | Kolette A. Page <br><br> 1052 N Damato Dr, Covina, CA 91724 |
| Obligor of Purchased Asset | Department of Veterans Affairs |
| Purchase Price for Purchased Asset: | $  20,419.47 |
| Discount Rate: | 7.00% |
| Term of Agreement (the "Term"): | 60 months |
| Monthly Cash Flow: | $     400.00 |

A-27

FUTURE INCOME PAYMENTS, LLC

## **EXHIBIT A**

## **TRANSACTION DETAILS**

| | |
|---|---|
| PR Number: | PR 3188 / Ruth Mae Becenti |
| Purchaser: | Goldstar Trust Company, LLC FBO Kolette A. Page, IRA |
| Purchaser's Address: | 1401 4th Ave., PO Box 719, Canyon, TX 79015 |
| IRA Owner: | Kolette A. Page |
| IRA Owner's Address: | 1052 N Damato Dr, Covina, CA 91724 |
| Obligor of Purchased Asset | Arizona State Retirement System |
| Purchase Price for Purchased Asset: | $  15,314.60 |
| Discount Rate: | 7.00% |
| Term of Agreement (the "Term"): | 60 months |
| Monthly Cash Flow: | $      300.00 |

A-28

FUTURE INCOME PAYMENTS, LLC

## EXHIBIT A

### TRANSACTION DETAILS

| | |
|---|---|
| PR Number: | PR 3188 / Wanda Jon Jones |
| Purchaser: | Goldstar Trust Company, LLC FBO Kolette A. Page, IRA |
| Purchaser's Address: | 1401 4th Ave., PO Box 719, Canyon, TX 79015 |
| IRA Owner: | Kolette A. Page |
| IRA Owner's Address: | 1052 N Damato Dr, Covina, CA 91724 |
| Obligor of Purchased Asset | Kentucky Retirement System |
| Purchase Price for Purchased Asset: | $  15,314.60 |
| Discount Rate: | 7.00% |
| Term of Agreement (the "Term"): | 60 months |
| Monthly Cash Flow: | $      300.00 |

A-29

FUTURE INCOME PAYMENTS, LLC

## EXHIBIT A

## TRANSACTION DETAILS

| | |
|---|---|
| PR Number: | PR 3188 / Jeanette Lavergn Free |
| Purchaser: | Goldstar Trust Company, LLC FBO Kolette A. Page, IRA |
| Purchaser's Address: | 1401 4th Ave., PO Box 719, Canyon, TX 79015 |
| IRA Owner: | Kolette A. Page |
| IRA Owner's Address: | 1052 N Damato Dr, Covina, CA 91724 |
| Obligor of Purchased Asset | Tennessee Consolidated Retirement System |
| Purchase Price for Purchased Asset: | $   7,447.49 |
| Discount Rate: | 7.00% |
| Term of Agreement (the "Term"): | 60 months |
| Monthly Cash Flow: | $     145.89 |

A-30

## EXHIBIT B: PURCHASE REQUEST

| PENSION TYPE | PURCHASE PRICE | PAYMENT PERIOD | DISCOUNT RATE | MONTHLY PAYMENT PURCHASED |
|---|---|---|---|---|
| [X] SPP [ ] FED [ ] CCC Special [ ] 3 Year Blend | 460,000 | 5 | 7 | $9011.01 |

**Purchaser's Information** *(Custodian's Information, See Proper Titling in Custodian's Paperwork)*

IRA OWNER *(Example: John Smith)*
Kolette A Page

IRA OWNER ADDRESS
1052 N Damato Dr

| CITY | STATE | ZIP CODE |
|---|---|---|
| Covina | CA | 91724 |

IRA OWNER E-MAIL ADDRESS        DOB        SOCIAL SECURITY #
Pagek @ verizon. net

PURCHASER *(Example: Goldstar Trust Company, LLC FBO, John Smith, IRA)*
GoldStar Trust FBO Kolette Page

CUSTODIAN'S MAILING ADDRESS
PO Box 719

| CITY | STATE | ZIP CODE |
|---|---|---|
| Canyon | TX | 79015 |

CUSTODIAN'S PHONE NUMBER
1.800.486.6888

**As IRA Owner:**

INITIALS — By initialing here, I confirm that the address above is Purchaser and IRA Owner mailing address.

INITIALS — By initialing here, I confirm that I will forward the Purchase Price set forth above to the bank account identified by FIP. Further, I confirm I understand that until the Purchase Price is so received no processing of this Purchase Request shall begin.

INITIALS — By initialing here I confirm that I understand the purchase of a future income payment based on the sale of a pension cash flow is only suitable for persons who have adequate financial means without the Purchase Price for the Purchased Asset, who desire a relatively long-term asset and who will not need immediate liquidity from this asset.

WEST\270036378.2

FIP LLC // p. 2

By initialing here, I confirm I understand that, while FIP will take certain steps in order to protect my rights to the Purchased Asset, there are events out of FIP's control which could result in my not receiving all payments purchased in a future income payment purchase transaction, and that FIP cannot and does not guarantee that I will receive all such payments.

By initialing here, I confirm that I understand there is no public market for this asset, which means that, should I want to re-sell this asset prior to the end of the agreed upon payment term, it will be difficult or impossible for me to do so.

By initialing here, I acknowledge that FIP is not providing, and does not provide, any legal, tax, financial or other advice of any nature and recommends that the IRA Owner and Purchaser consult their own professional advisor(s) prior to entering into a transaction for the purchase of a future income stream.

By initialing here, I that I understand that this Purchase Request is not a contract between myself and FIP, and that neither I nor FIP will be bound or owe any obligation to the other unless and until a FIP LLC Purchase Agreement is executed between FIP and myself.

**IRA Owner:**

PRINTED NAME

SIGNATURE

DATE 12-16-16

**Purchaser:**

PRINTED NAME (Example: Goldstar Trust Co. FBO Name, IRA)

GoldStar Trust FBO Kolette Page

SIGNATURE *(Signed by Custodian)*

Carla McCaslin

DATE 1.3.17

**Agent:**

PRINTED NAME

Matthew Bierer

SIGNATURE

DATE 12-16-16

**Accepted by Home Office:**

FIP LLC

SIGNATURE
Glorilyn Cusi

Date 1/10/17

WEST\270036378.2

01/10/2017  10:04:40 AM  Page 1

Kolette A. Page

Compound Period ......... :  Monthly

Effective Annual Rate ... :  7.000 %

CASH FLOW DATA

| Event | Date | Amount | Number | Period | End Date |
|-------|------|--------|--------|--------|----------|
| 1  Lumpsum | 01/20/2017 | 460,000.00 | 1 | | |
| 2  Cash Flow | 01/20/2017 | 9,011.01 | 60 | Monthly | 12/20/2021 |

AMORTIZATION SCHEDULE - Normal Amortization

| | Date | Lumpsum | Cash Flow | Interest | Principal | Balance |
|---|------|---------|-----------|----------|-----------|---------|
| Lumpsum | 01/20/2017 | 460,000.00 | | | | 460,000.00 |
| Cash Flow | 01/20/2017 | | 9,011.01 | 0.00 | 9,011.01 | 450,988.99 |
| Cash Flow | 02/20/2017 | | 9,011.01 | 2,549.96 | 6,461.05 | 444,527.94 |
| Cash Flow | 03/20/2017 | | 9,011.01 | 2,513.43 | 6,497.58 | 438,030.36 |
| Cash Flow | 04/20/2017 | | 9,011.01 | 2,476.69 | 6,534.32 | 431,496.04 |
| Cash Flow | 05/20/2017 | | 9,011.01 | 2,439.74 | 6,571.27 | 424,924.77 |
| Cash Flow | 06/20/2017 | | 9,011.01 | 2,402.59 | 6,608.42 | 418,316.35 |
| Cash Flow | 07/20/2017 | | 9,011.01 | 2,365.22 | 6,645.79 | 411,670.56 |
| Cash Flow | 08/20/2017 | | 9,011.01 | 2,327.65 | 6,683.36 | 404,987.20 |
| Cash Flow | 09/20/2017 | | 9,011.01 | 2,289.86 | 6,721.15 | 398,266.05 |
| Cash Flow | 10/20/2017 | | 9,011.01 | 2,251.85 | 6,759.16 | 391,506.89 |
| Cash Flow | 11/20/2017 | | 9,011.01 | 2,213.64 | 6,797.37 | 384,709.52 |
| Cash Flow | 12/20/2017 | | 9,011.01 | 2,175.20 | 6,835.81 | 377,873.71 |
| 2017 Totals | | 460,000.00 | 108,132.12 | 26,005.83 | 82,126.29 | |
| Cash Flow | 01/20/2018 | | 9,011.01 | 2,136.55 | 6,874.46 | 370,999.25 |
| Cash Flow | 02/20/2018 | | 9,011.01 | 2,097.68 | 6,913.33 | 364,085.92 |
| Cash Flow | 03/20/2018 | | 9,011.01 | 2,058.59 | 6,952.42 | 357,133.50 |
| Cash Flow | 04/20/2018 | | 9,011.01 | 2,019.28 | 6,991.73 | 350,141.77 |
| Cash Flow | 05/20/2018 | | 9,011.01 | 1,979.75 | 7,031.26 | 343,110.51 |
| Cash Flow | 06/20/2018 | | 9,011.01 | 1,940.00 | 7,071.01 | 336,039.50 |
| Cash Flow | 07/20/2018 | | 9,011.01 | 1,900.02 | 7,110.99 | 328,928.51 |
| Cash Flow | 08/20/2018 | | 9,011.01 | 1,859.81 | 7,151.20 | 321,777.31 |
| Cash Flow | 09/20/2018 | | 9,011.01 | 1,819.38 | 7,191.63 | 314,585.68 |
| Cash Flow | 10/20/2018 | | 9,011.01 | 1,778.71 | 7,232.30 | 307,353.38 |
| Cash Flow | 11/20/2018 | | 9,011.01 | 1,737.82 | 7,273.19 | 300,080.19 |
| Cash Flow | 12/20/2018 | | 9,011.01 | 1,696.70 | 7,314.31 | 292,765.88 |
| 2018 Totals | | 0.00 | 108,132.12 | 23,024.29 | 85,107.83 | |
| Cash Flow | 01/20/2019 | | 9,011.01 | 1,655.34 | 7,355.67 | 285,410.21 |
| Cash Flow | 02/20/2019 | | 9,011.01 | 1,613.75 | 7,397.26 | 278,012.95 |
| Cash Flow | 03/20/2019 | | 9,011.01 | 1,571.93 | 7,439.08 | 270,573.87 |
| Cash Flow | 04/20/2019 | | 9,011.01 | 1,529.86 | 7,481.15 | 263,092.72 |
| Cash Flow | 05/20/2019 | | 9,011.01 | 1,487.56 | 7,523.45 | 255,569.27 |
| Cash Flow | 06/20/2019 | | 9,011.01 | 1,445.03 | 7,565.98 | 248,003.29 |
| Cash Flow | 07/20/2019 | | 9,011.01 | 1,402.25 | 7,608.76 | 240,394.53 |

Kolette A. Page

|  | Date | Lumpsum | Cash Flow | Interest | Principal | Balance |
|---|---|---|---|---|---|---|
| Cash Flow | 08/20/2019 |  | 9,011.01 | 1,359.23 | 7,651.78 | 232,742.75 |
| Cash Flow | 09/20/2019 |  | 9,011.01 | 1,315.96 | 7,695.05 | 225,047.70 |
| Cash Flow | 10/20/2019 |  | 9,011.01 | 1,272.45 | 7,738.56 | 217,309.14 |
| Cash Flow | 11/20/2019 |  | 9,011.01 | 1,228.70 | 7,782.31 | 209,526.83 |
| Cash Flow | 12/20/2019 |  | 9,011.01 | 1,184.70 | 7,826.31 | 201,700.52 |
| 2019 Totals |  | 0.00 | 108,132.12 | 17,066.76 | 91,065.36 |  |
|  |  |  |  |  |  |  |
| Cash Flow | 01/20/2020 |  | 9,011.01 | 1,140.44 | 7,870.57 | 193,829.95 |
| Cash Flow | 02/20/2020 |  | 9,011.01 | 1,095.94 | 7,915.07 | 185,914.88 |
| Cash Flow | 03/20/2020 |  | 9,011.01 | 1,051.19 | 7,959.82 | 177,955.06 |
| Cash Flow | 04/20/2020 |  | 9,011.01 | 1,006.18 | 8,004.83 | 169,950.23 |
| Cash Flow | 05/20/2020 |  | 9,011.01 | 960.92 | 8,050.09 | 161,900.14 |
| Cash Flow | 06/20/2020 |  | 9,011.01 | 915.41 | 8,095.60 | 153,804.54 |
| Cash Flow | 07/20/2020 |  | 9,011.01 | 869.63 | 8,141.38 | 145,663.16 |
| Cash Flow | 08/20/2020 |  | 9,011.01 | 823.60 | 8,187.41 | 137,475.75 |
| Cash Flow | 09/20/2020 |  | 9,011.01 | 777.31 | 8,233.70 | 129,242.05 |
| Cash Flow | 10/20/2020 |  | 9,011.01 | 730.75 | 8,280.26 | 120,961.79 |
| Cash Flow | 11/20/2020 |  | 9,011.01 | 683.94 | 8,327.07 | 112,634.72 |
| Cash Flow | 12/20/2020 |  | 9,011.01 | 636.85 | 8,374.16 | 104,260.56 |
| 2020 Totals |  | 0.00 | 108,132.12 | 10,692.16 | 97,439.96 |  |
|  |  |  |  |  |  |  |
| Cash Flow | 01/20/2021 |  | 9,011.01 | 589.50 | 8,421.51 | 95,839.05 |
| Cash Flow | 02/20/2021 |  | 9,011.01 | 541.89 | 8,469.12 | 87,369.93 |
| Cash Flow | 03/20/2021 |  | 9,011.01 | 494.00 | 8,517.01 | 78,852.92 |
| Cash Flow | 04/20/2021 |  | 9,011.01 | 445.85 | 8,565.16 | 70,287.76 |
| Cash Flow | 05/20/2021 |  | 9,011.01 | 397.42 | 8,613.59 | 61,674.17 |
| Cash Flow | 06/20/2021 |  | 9,011.01 | 348.71 | 8,662.30 | 53,011.87 |
| Cash Flow | 07/20/2021 |  | 9,011.01 | 299.74 | 8,711.27 | 44,300.60 |
| Cash Flow | 08/20/2021 |  | 9,011.01 | 250.48 | 8,760.53 | 35,540.07 |
| Cash Flow | 09/20/2021 |  | 9,011.01 | 200.95 | 8,810.06 | 26,730.01 |
| Cash Flow | 10/20/2021 |  | 9,011.01 | 151.14 | 8,859.87 | 17,870.14 |
| Cash Flow | 11/20/2021 |  | 9,011.01 | 101.04 | 8,909.97 | 8,960.17 |
| Cash Flow | 12/20/2021 |  | 9,011.01 | 50.84 | 8,960.17 | 0.00 |
| 2021 Totals |  | 0.00 | 108,132.12 | 3,871.56 | 104,260.56 |  |
|  |  |  |  |  |  |  |
| Grand Totals |  | 460,000.00 | 540,660.60 | 80,660.60 | 460,000.00 |  |

01/10/2017  10:04:40 AM  Page 3

Kolette A. Page

Last interest amount increased by 0.18 due to rounding.



**GOLDSTAR TRUST COMPANY**

*IRA PERIODIC DISTRIBUTION FORM*

P.O. Box 719
Canyon, TX 79015
(800) 486-6888
Fax (806) 655-2490
info@goldstartrust.com

---

## IRA ACCOUNT OWNER

Name _____    GoldStar Account # _____

Address _____    IRA Type: ☐ Traditional    ☐ Roth

_____    ☐ SEP    ☐ SIMPLE

Email _____    Daytime Phone _____

---

## TRADITIONAL, SEP, or SIMPLE IRA DISTRIBUTION REASON

I direct the Custodian to make a distribution from my IRA for the following reason:

☐ Normal Distribution                   ☐ Early Distribution (IRS Penalty Applies)    ☐ Early SIMPLE IRA Distribution
☐ Disability                            ☐ Early Distribution (IRS Penalty Exception)   ☐ Death
☐ Direct Rollover to Employer Plan

---

## ROTH IRA DISTRIBUTION REASON

I direct the Custodian to make a distribution from my ROTH IRA for the following reason:

☐ Qualified Distribution                ☐ Early Distribution                          ☐ Death
☐ Disability                            ☐ Roth Distribution, Over Age 59 1/2

---

## AMOUNT AND METHOD OF WITHDRAWAL

*Recurring Distributions (Please check one in each row)*

**Amount:** ☐ All Cash Available   ☐ Fixed Dollar Amount $_____   ☐ Interest ☐ Principal

**Frequency:** ☐ Monthly ☐ Bi-Monthly ☐ Quarterly ☐ Semi-annually ☐ Annually
(does not apply to annual Required Minimum Distributions)

**Distribution Date (funds will be received the next business day):** ☐ 1st of month ☒ 15th of month ☐ 26th of month

**Begin:** ☒ As Soon As Possible   OR   ☐ Starting on _____ / _____ / 20 _____

---

## WITHHOLDING ELECTION (Please Check One):

☐ Withhold Federal income tax at a rate of _____% (not less than 10 percent) from the amount withdrawn.
Withhold additional Federal income tax of _____.

☐ I elect not to have Federal income tax withheld. I understand that I am still liable for the payment of Federal income tax on the amount of any distributions received. I also understand that I may be subject to Federal income tax penalties under the estimated tax payments rules if my payments of the estimated tax and withholding are insufficient. Effective _____ / _____ / 20 _____.

continues on page 2 ➡

## *IRA PERIODIC DISTRIBUTION FORM, CONT...*

### PAYMENT DELIVERY INSTRUCTIONS (Please Check One):

☐ 1. **Direct payment by check.** ($5.00 Check Fee Applies)

☐ 2. **Direct payment via ACH fund transfer.** (No charge) **PLEASE FILL OUT THE BOTTOM SECTION OF THIS FORM FOR DIRECT DEPOSIT.**

☐ 3. **Direct payment via Bank Wire.** A $25.00 wire fee applies. Attach wiring instructions for your banking institution (Name of bank and bank's physical address, routing number and account number).

☐ 4. **Alternate payment instructions.** (Complete only if different than name or address on account. Signature Guarantee Required)

_____

_____

#### RECIPIENT'S ACKNOWLEDGEMENT AND SIGNATURE

I certify that I am the proper party to receive payment(s) from this account and that all information provided by me is true and accurate. I expressly assume the responsibility for any adverse consequences which may arise from this withdrawal and I agree that the Custodian shall in no way be held responsible.

X _____
IRA Holder Signature

Date_____

#### MEDALLION SIGNATURE GUARANTEE
(A Medallion Stamp is required if funds are sent to an address other than the address of record)

---

- - - - - - - - - - - - - - - **DIRECT DEPOSIT PAYMENT ELECTION (complete if you checked #2 above)** - - - - - - - - - - - - - - -

I have elected to have the selected IRA distribution(s) directly deposited into my bank account. I understand that due to the ACH reporting limitations of most banks, a detailed summary of each payment sent to my bank may not be reported to me by my bank, and that I will obtain this information through the GoldStar website.

### BANK INFORMATION

Bank Name: _____   Bank Phone: _____

Bank Address: _____

City: _____   State: _____   Zip: _____

Name on Bank Account: _____

Routing / ABA Number: _____   (must be 9 digits in length)

Bank Account Number: _____

**Note:** It takes 5 business days from the day GoldStar receives your request to establish ACH service and electronically confirm the account with your bank.

I hereby authorize GoldStar Trust Company to initiate credit entries and to initiate, if necessary, debit entries and adjustments for any credit entries in error to my account at the bank named above. I authorize the bank to accept any such credits or debits to my account without responsibility for their correctness. I further agree that GoldStar Trust Company will not incur any loss, liability, cost, or expense for acting upon this request. I understand that this authorization may be terminated by me at any time by written notification to GoldStar Trust Company and to the bank. The termination request will be effective as soon as GoldStar Trust Company has had a reasonable amount of time to act upon it.

**IMPORTANT:** If you are required to obtain a signature guarantee (see right), do not sign below until you are in the presence of an authorized officer.

X _____
Account Holder Signature

Date_____

#### SIGNATURE GUARANTEE – ONLY IF APPLICABLE

If the name on your bank account is not identical to the name on your GoldStar account(s), you must have your signature guaranteed. If your name is listed on a joint bank account, a signature guarantee is not necessary. If a signature guarantee is necessary and you do not provide one, GoldStar cannot establish this option on your account. You can obtain a signature guarantee from an authorized member of a bank, broker, or other qualified financial institution. A notary public cannot provide a signature guarantee.

#### AUTHORIZED OFFICER TO PLACE STAMP HERE

## EXHIBIT C

**LIMITED IRREVOCABLE POWER OF ATTORNEY**

Through this Limited Irrevocable Power of Attorney, _____
(the "**Grantor**") hereby makes, constitutes and appoints **FIP LLC** (the "**Recipient**") as its true and lawful attorney-in-fact with full power and authority to act on behalf of Grantor solely with respect to the following matters:

- To communicate directly with Seller(s) (as defined in that certain Future Income Payment Purchase Agreement between Grantor and Recipient to which this Limited Irrevocable Power of Attorney is an exhibit (the "**FIPPA**") with respect to late or delinquent receipt by Recipient or Grantor of any payments constituting the Purchased Asset as a result of the Seller failing to send such payment in a timely manner.

- To execute any and all releases, authorizations, consent forms or other documents necessary for Recipient to do or accomplish any of the foregoing.

This Limited Irrevocable Power of Attorney shall remain effective only so long as the Grantor is entitled to receive payments comprising the Purchased Asset under the terms of the FIPPA.

This Limited Irrevocable Power of Attorney is entered into and shall be governed by the laws of the State of California without regard to conflicts of law principles of such state.

**In Witness Whereof,** Grantor and Recipient have executed this Limited Irrevocable Power of Attorney on the date(s) set forth below:

_____, (Date)

**IRA Owner**

PRINTED NAME

SIGNATURE

DATE