1  Brandon S. Reif (SBN 214706)
2  Marc S. Ehrlich (SBN 198112)
   Ohia A. Amadi (SBN 268876)
3  **REIF LAW GROUP, P.C.**
4  10250 Constellation Blvd., Suite 100
   Los Angeles, CA 90067
5  Tel: 310.494.6500
6  Email: Docket@reiflawgroup.com; BReif@reiflawgroup.com;
           MEhrlich@reiflawgroup.com; OAmadi@reiflawgroup.com
7
8  Attorneys for Plaintiffs (Co-counsel information on next page)

9                    UNITED STATES DISTRICT COURT
10                  CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KOLETTE A. PAGE and CLETUS M. PAGE, individually and on behalf of their individual retirement accounts,<br><br>Plaintiffs,<br><br>v.<br><br>MINNESOTA LIFE INSURANCE COMPANY, a Minnesota corporation; SHURWEST HOLDING COMPANY, INC., an Arizona corporation; SHURWEST, LLC, an Arizona limited liability company; HAPPY STATE BANK & TRUST COMPANY dba GOLDSTAR TRUST COMPANY, a Texas business entity (corporate status unknown); FUTURE INCOME PAYMENTS, LLC, a Delaware limited liability company; CMAM, INC. dba HERITAGE FINANCIAL SERVICES, a California corporation; ALBERT ANDREW MANFRE, an individual; JEANETTE MANFRE, an individual; MATTHEW LEE BIESER, an individual; and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 8:18-cv-01208-AG-KES<br>[Hon. Andrew J. Guilford]<br><br>**DECLARATION OF CLETUS M. PAGE IN SUPPORT OF PLAINTIFFS' OPPOSITION TO HAPPY STATE BANK DBA GOLDSTAR TRUST COMPANY'S MOTION TO DISMISS**<br><br>Action Filed:   July 9, 2018<br>Trial Date:      January 28, 2020 |

DECLARATION OF CLETUS M. PAGE IN SUPPORT OF PLAINTIFFS'
OPPOSITION TO HAPPY STATE BANK DBA GOLDSTAR TRUST COMPANY'S MOTION TO DISMISS

1  Jon C. Furgison (SBN 205761)
2  **FURGISON LAW GROUP, P.C.**
   444 Longfellow Avenue
3  Hermosa Beach, CA 90254
   Tel: 310.356.6890
4  Email: jon@furgisonlawgroup.com
5
6  Attorneys for Plaintiffs
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DECLARATION OF CLETUS M. PAGE IN SUPPORT OF PLAINTIFFS'
OPPOSITION TO HAPPY STATE BANK DBA GOLDSTAR TRUST COMPANY'S MOTION TO DISMISS

I, Cletus Page, declare:

1. I am over the age of 18 and a resident of the State of California. I am a plaintiff in this case along with my wife Kolette Page. I have personal knowledge of the facts set forth in this declaration and if called upon, I could and would give competent testimony at a hearing or trial regarding those facts.

2. I am 75 years old and I am retired. I permanently reside in Covina, California and have done so continuously since before the events alleged in my complaint.

3. In 2007, Kolette and I had retained Security Financial Group to prepare a trust for us. On information and belief, Security Financial is a predecessor company to CMAM, Inc. dba Heritage Financial Services ("Heritage"). In or about September of 2016, I called Security Financial about making some revisions to our trust. However, Security Financial was apparently out-of-business so the number I called connected me to Heritage instead.

4. The receptionist from Heritage explained to me that Security Financial was now Heritage, but still had the capability to do the trust revisions for us. Heritage assigned Matthew Bieser to help us with the revisions. I had never met Matthew prior to his assignment as our financial advisor. He personally came to our home several times in order to get information for the trust revision.

5. Part of the information Matthew collected from me included the amount of money in my individual retirement account ("IRA"). At the time, Lincoln Financial Group ("Lincoln") managed my IRA. I had roughly $800,000 in my IRA invested exclusively in low risk Lincoln funds.

6. Once Matthew saw the value of my IRA, he soon began trying to convince me to invest in a program (the "Structured Settlement program") requiring me to liquidate the investments in my Lincoln IRA and transfer the entire amount of proceeds to an IRA custodian Matthew recommended—Defendant Goldstar Trust Company ("Goldstar"). GoldStar would then take custody of my IRA and

-1-

DECLARATION OF CLETUS M. PAGE IN SUPPORT OF PLAINTIFFS'
OPPOSITION TO HAPPY STATE BANK DBA GOLDSTAR TRUST COMPANY'S MOTION TO DISMISS

purchase securities in Future Income Payments, LLC ("FIP"). The proceeds from FIP would be used to fund large permanent life insurance policies from Minnesota Life Insurance Company. Matthew told me and my wife that he was a licensed agent of Minnesota Life Insurance Company ("MN Life").

7. I was initially reluctant to buy into the Structured Settlement program Matthew recommended. However, Matthew personally visited me and my wife many times at our home before we agreed to invest in the Structured Settlement program. He made me feel like I was his friend. Sometimes he would bring his pregnant wife with him to my house. And, after she gave birth, he came with both his wife and their newborn son Brandon. I even remember on one occasion during one of Matthew's visits, I excused myself because I was going to see a movie in the theater. Matthew said he had been wanting to see the movie too and then followed and watched the movie with me.

8. Matthew convinced me that investing in the Structured Settlement program would earn me significantly more than my IRA was earning at the time. He guaranteed me that it was a risk-free program and that I would earn at least 7% annually on my investment in FIP—which was several percentage points higher than my IRA was then earning.

9. Matthew also explained to me that if I invested the proceeds from FIP in permanent life insurance policies with MN Life, I would be able to afford a policy with a death benefit of roughly $2 million. The policy would also increase in value over time and eventually become another source of income.

10. Matthew told me and Kolette that he had been introduced to the Structured Settlement program by Defendants Shurwest, LLC and Shurwest Holding Company, Inc. (together, "Shurwest"). He told us that his contact at Shurwest was Melanie Schulze-Miller and that Shurwest recommended the Structured Settlement program to him.

11. Ms. Schulze-Miller and Shurwest were mostly in the back-office operation but Matthew assured me and Kolette that Shurwest vetted and endorsed the Structured Payment program and Shurwest's endorsement further guaranteed it as risk-free and safe program.

12. Kolette and I did have a conference call once with Ms. Schulze-Miller and Matthew on the call. Matthew needed guidance on how to structure the transfer of money from our GoldStar IRA accounts to MN Life to cover our policy premiums. (See below.)

13. Matthew also informed me and Kolette of another Shurwest employee who was assisting in the processing of my insurance policy application named Bridget Davis.

14. Kolette and I depended on the money in my IRA to cover our immediate living expenses in retirement. Matthew assured me that FIP was a safe and conservative investment guaranteed to make at least 7% on my investment with complete return of my principal within five years. Matthew also promised me that between the life insurance and FIP investment, I would make thousands of dollars a month and benefit from the life insurance policy worth millions of dollars if either me or Kolette died.

15. From September 2016 to about November 2016, Shurwest received and transmitted to MN Life medical records and test results from medical exams I had to undergo in order to qualify for a MN Life insurance policy.

16. I also submitted an extensive application to MN Life for the insurance policies. In the application, I disclosed details of my and my wife's financial assets including our IRAs. I provided detail on the limited fixed income Kolette and I received also. There was a question in the application that asked how I would fund my policy premiums. Matthew—who was at my home with me while I completed the application—told me to indicate that I would fund the premium from my

1  savings. This was correct, however my savings included roughly $800,000 dollars
2  in my IRA.

3      17.    As was his usual procedure, Matthew had brought the paperwork to
4  my house. Matthew then sat by me and my wife while we completed the
5  paperwork. After we completed the paperwork, he took the applications with him.

6      18.    On or about December 16, 2016, sometime after I learned that MN
7  Life had approved me for the policy, Matthew brought paperwork to my home that
8  was required to transfer my IRA to GoldStar and to purchase FIP securities. I had
9  never received or reviewed any of the documents prior to Matthew bringing them to
10 my home. Matthew brought multiple agreements, written in technical language. It
11 amounted to a thick stack of papers. So there were many terms I either did not have
12 time to review or understand. However, after 4 months of personal visits from
13 Matthew, I trusted that he had my best interests at heart. Matthew simply opened
14 the stack of papers to the places I needed to sign. So I just followed Matthew's
15 instructions and signed where he indicated. He did not leave a copy for me and my
16 wife to review before signing. And we never received a copy of the fully signed
17 paperwork until after the Structured Settlement program collapsed, so I did not have
18 a chance to review the agreements after entering into them.

19     19.    Attached as Exhibit 1 hereto is a true and correct copy of the FIP
20 Purchase Agreement ("FPA") that I signed. Matthew did not leave a copy of this
21 with me or send me a copy once it was fully signed. I received a copy a year-and-a-
22 half later, in or about April 2018, after FIP announced it was ceasing operations and
23 would no longer make any payments to me or other investors. At that time, I went
24 with my wife to meet Al Manfre in person at Heritage's office. Al provided me
25 with a copy of the FPA along with my account documents.

26     20.    Matthew also brought GoldStar forms for me to fill out in order to
27 transfer my Lincoln IRA to GoldStar. I had never previously heard of GoldStar and
28

did not freely choose GoldStar as my IRA custodian. Matthew told me that all the FIP investors used GoldStar so I did not have a choice.

21. Prior to FIP ceasing operations, neither Matthew nor anyone from Shurwest, Heritage, or GoldStar ever told me that FIP was under investigation by numerous state and federal regulators for issuing predatory loans to retirees, veterans and other pensioners or how much risk I was taking by investing my entire IRA in the Structured Settlement program.

22. In or about January 2017, the time came for me to fund my initial partial premium for the MN Life insurance policy. The combined payments for my policy and Kolette's policy exceeded our combined annual income. In order to fund the policy premiums, GoldStar sold some of my FIP securities and distributed money from my IRA to my bank which I then transferred to MN Life. I ended up being taxed on the distribution. Neither Matthew or anyone else from GoldStar, Heritage or Shurwest ever told me that the distribution from GoldStar to fund the insurance policies would be a taxable event.

23. In fact, I had to take a loan on the MN Life policy to help pay for the additional taxes from the distribution that came due and I paid in April 2017.

24. Matthew depended on Ms. Shulze-Miller and Shurwest to determine how exactly I was to get money from my GoldStar IRA to MN Life. So on or about January 17, 2017, while Matthew was at my house, Matthew called Ms. Schulze-Miller so my wife and I could have a conference call. Matthew put Ms. Schulze-Miller on speaker and I listened as she explained that she would arrange for a transfer from my GoldStar IRA to my bank in California and then I would need to wire the money to MN Life. This is in fact what I did.

25. Defendants Structured Settlement program began unraveling in or about February 2018. It appeared to me that I was not receiving the amount of distributions that I was supposed to from FIP.

26. My wife and I called Matthew to talk about the shortfall and for Matthew to find out what was holding up my payments. After two months of increasingly panicked calls from Kolette and I, we finally received a joint payment in April 2018 for $22,000 after tax. However, shortly after that I received a letter from FIP stating that it was ceasing operations due to regulatory actions against it and from GoldStar failing to "keep partner" with FIP.

27. Since that time, I have gotten confirmation both from conversations with Matthew and with Al and from documents produced so far in this case, that Shurwest was the hub connecting GoldStar, Heritage, FIP and Minnesota Life in the Structured Settlement program.

28. Ms. Schulze-Miller regularly communicated by phone and/or email with FIP and GoldStar directly. She provided the opportunity to sell FIP interests to Matthew and Heritage. She also provided logistical and other advice to facilitate the program. And Shurwest was the intermediary between Heritage and MN Life. While Cletus and I primarily interacted with Matthew and Heritage and received documents from them, they submitted the documents we gave back to them to Shurwest and Shurwest then transmitted the documents to MN Life. Matthew and Al both told us that Ms. Schulze-Miller was fired over offering this program and that they, Heritage, could not believe that the CEO of Shurwest did not know anything about it. They also said over and over, "your money is safe if we have to we will sue Shurwest because they were the ones that recommended this program to us". Al Manfre also told me that he has "known Ron Shurts the CEO of Shurwest for over 20 years. He said this statement to Kolette and I numerous times, both in person and on weekly telephone calls after FIP's collapse.

29. Shurwest also directed Matthew and Heritage regarding the information they needed to obtain from us and transmitted instructions from MN Life to Matthew and Heritage.

30. I am also informed and believe that there were numerous other retirees such as Kolette and I who lost their retirement funds through Defendants' Structured Settlement program. There were at least 12 other individuals with Heritage alone, all of whom reside in California.

31. As a direct result of the additional stress from seeing the bulk of my savings disappear, I have suffered severe physical symptoms. The stress has exacerbated a high cholesterol condition I suffer from. I've had to increase the dosage of prescription medications I take for my high cholesterol.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct and that this declaration was executed on October 29, 2018 in Santa Clara, California.

_____
Cletus M. Page